Moore v. Moss.

---

JAMES C. MOORE, Plaintiff in Error, *v.* WILLIAM S. MOSS, Defendant in Error.

ERROR TO PEORIA.

Where there is a conflict between two statutes, effect must be given to the latest.

In cases of collision between steamboats on our rivers, the one which is out of her proper place, as fixed by the statute, is *primâ facie* in the wrong, and liable for all damages which may accrue in consequence.

A boat is not at liberty to cast herself upon another boat, merely because the latter may be out of her proper course and in that of the former. Both are bound to use ordinary diligence to avoid a collision, and if a collision happens from the want of a proper degree of diligence on the part of either, the owner may be held answerable for the consequences.

A party to a suit is not at liberty to assign for error the fact that some of the instructions given by the court are more favorable to him than the statute warrants.

A boat ascending a river should take the middle of the channel, so that a descending boat can take either side. In the night time a boat ascending has the right to pass up the small chutes in the river, and the descending boat must keep in the main channel, but may take either side of the centre thereof.

Independent of these provisions, the managers of steamboats may, as respects themselves, make regulations for the passage of their boats; but this may not exempt them from some of the provisions of the statute.

THE declaration alleged that plaintiff owned a steamboat, running on the Illinois river: defendant also. Defendant run his boat carelessly and negligently against plaintiff's and broke and injured it. Plaintiff greatly damaged thereby and obliged to pay out money to repair it, $1,500 ; lost use of it for a long time; also the profits of the use of it, &c.

2d count. Same as first, except that the names of the boats are given — plaintiff's, Avalanche ; defendant's, Alvarado.

Plea, not guilty.

Instructions given at the instance of plaintiff : —

1st. That boats going down must in the night keep the main channel, and not take any of the small chutes, these small chutes being the right of the ascending boat alone in the night. That the object of the latter clause of the 2d section of chap. 102, Revised Statutes, was intended to avoid collision in the night time in the small chutes.

2d. That, independent of the laws, boatmen have a right, as between themselves, to establish signs or signals, indicating in what manner they desire to pass each other on the river. That if such signs or signals are given by one boat, and answered by the other, and understood by both, it is a contract that the boats are to pass each other according to such signals, and that the presumption of law is, that when signals are given and answered according to the custom of the river, that they are understood by both the parties who make them.

3d. If the jury believe that in this case signals were given and returned by both boats, indicating that each boat should pass to the larboard or left, and that the plaintiff used all reasonable diligence to do so, and all reasonable care and skill in so doing, to avoid a collision, and that the collision occurred through the carelessness, negligence, or inattention of the defendant or his officers, then the plaintiff is entitled to recover in this suit, and that the measure of damages is the damages for the reasonable detention at the place of collision, the cost of the repairs of the boat occasioned by the collision, the necessary pay and expenses of officers and hands necessarily occupied about the boat during a reasonable time for making the repairs made necessary by said collision.

4th. That if the jury believe from the evidence that the signal to pass to the left was given by both boats, as contemplated by the third instruction, and that afterwards defendant's boat kept directly on its course, not leaving sufficient room for plaintiff's boat to pass to the left, or that defendant's boat, after the signals given as aforesaid, attempted to pass to the right, this, unexplained, would be evidence of gross negligence and carelessness on the part of the defendant or his officers.

Instructions of defendant modified.

5th. The proper course or place for the Alvarado in the night time, was to run by the bank of the river, and leave the middle of the stream or channel of the river for the passage of the boats going down the stream ; and the proper course or place for the Avalanche in the night time, was to keep the main channel in order to avoid the ascending boats ; and if the jury believe from

Moore *v.* Moss.

the evidence, that the Alvarado was running up by the eastern shore, and that the Avalanche ran out of the main channel and crossed over towards the eastern bank, and thereby caused the collision complained of in the declaration, they will find a verdict for the defendant, unless they believe that by the signals from both boats, it was agreed to change the course they were pursuing, [or unless the officers of the Alvarado failed to use ordinary care and diligence to avoid the collision under the circumstances of the case.]

The clause in brackets, added by the court as a qualification.

6th. If the jury believe from the evidence that the Avalanche was out of her proper place, and in the proper course of the Alvarado at the time of the collision, Moore is not answerable for the damage resulting from the collision, unless he was guilty of gross negligence or some wanton act.

The court added this qualification : —

Gross negligence being the absence or want of ordinary care and diligence.

10th. If the loss or injury was occasioned partly by the want of care, or from the negligence or fault of the plaintiff, or the officers having charge of the Avalanche, the defendant will not be answerable therefor unless he or his officers were guilty of gross negligence.

Qualification — " Or want of ordinary care and diligence in avoiding the collision."

Instruction refused.

If the jury believe from the evidence that the Alvarado was running up by the east bank of the river, and that the Avalanche ran across the river, toward and near the east shore, into and across the course of the Alvarado, the plaintiff cannot recover in this suit. Not for the wrong of the Alvarado, because such a state of facts would show, that the Avalanche was also in the wrong. Not on the supposed implied contract, made by the exchange of signal bells, because the plaintiff has not brought his action for any such breach of contract.

Cause heard before Kellogg, Judge, and a jury, at the August term, 1851, of the Peoria Circuit Court. Verdict and judgment for $575 damages.

Peters and Blakely, for plaintiff in error.

N. H. Purple, for defendant in error.

Treat, C. J. The 102d chapter of the Revised Statutes, relating to the navigation by steamboats of the rivers within

Moore v. Moss.

the jurisdiction of this State, provides, that " In ascending and descending navigation, said boats shall conform to the following regulations: the descending boat shall keep the shore or bar she may be on, until the ascending boat passes; and when both boats are running, the ascending boat shall keep the middle of the channel, or in the deepest water, and in all cases where it is practicable, leave room for the descending boat to pass on either side. When two boats shall meet in a contracted part of the river, or in any narrow or intricate channel, both boats shall stop their engines, or work them very slow, until they pass each other; and in the night time, the descending boat shall not take any of the small chutes, but shall keep the main channel, in order to avoid the ascending boats." These provisions are free from all doubt. The object is to prevent collisions between boats meeting on the rivers. The meaning is plain and explicit. It is the duty of the ascending boat to take the middle of the channel, so that the descending boat can pass on either side. The proper position of the former is in the centre of the channel; that of the latter along either shore of the stream. There is a single exception to this general regulation. In the night time, it is the right of the ascending boat to pass up the small chutes in the river; and the descending boat must keep in the main channel, but may take either side of the centre thereof. These are the positive requirements of the statute. Whether wisely or unwisely made is not the question. The courts must enforce the law as they find it. The reason rests with the legislature.

It was insisted, from the course of legislation on this subject, that these provisions should be so construed as to give the ascending boat the right to take either side of the river, and confine the descending boat to the middle of the channel. This chapter of the Revised Statutes, except in the particulars to be noticed, is a transcript of the " Act to prevent disasters on steamboats navigating the waters within the jurisdiction of Illinois," approved the 21st of July, 1837. The corresponding portion of that act, as appears from the original on file in the secretary's office, reads thus: " the descending boat shall keep the shore or bar she may be on, until the ascending boat passes; and when both boats are running, the descending boat shall keep the middle of the channel, or in the deepest water, and in all cases where it is practicable, leave room for the ascending boat to pass on either side." There is a direct conflict between the two statutes. The words " ascending " and " descending" are so transposed in the revision, as to render the provisions of the two laws wholly irreconcilable.

The position of the boats is reversed. This part of the act of 1837, as published with the laws passed in that year, reads as follows: "the descending boat shall keep the shore or bar she may be on, until the ascending boat passes; and when both boats are running, the descending boat shall keep the middle of the channel, or in the deepest water, and in all cases where it is practicable, leave room enough for the descending boat to pass on either side." The act, in an important respect, was incorrectly published. From its passage to the revision of the laws in 1845, it was impossible to ascertain its true meaning from the printed statutes. It was necessary to refer to the original law in the office of the secretary of state. Where there is a conflict between two statutes, effect must be given to the latest statute. The Revised Statutes, therefore, modified the act of 1837, so far as the provisions of the two laws are inconsistent. It cannot be intended, as in the case of Dutcher v. Crowell, 5 Gilman, 445, that the legislature designed to continue the law of 1837 in force without alteration. If it had been incorporated into the Revised Statutes precisely as it was published with the acts of that year, the case might perhaps fall within the principle of Dutcher v. Crowell. But the law, as contained in the revision, is not a copy of the act of 1837, either as it was passed or published. The conclusion is, therefore, unavoidable, that the legislature acted advisedly in the matter, and really intended to change the former law in the particulars under consideration. Dutcher v. Crowell was an extreme case, and the rule there laid down cannot with propriety be extended. We are not aware of any precedent or authority to justify the construction contended for.

In this case, the collision took place when the boats were at a considerable distance from the centre of the main channel. The proper course of the Alvarado was in the middle of the channel; and it was the right of the Avalanche to pass down on either side; in other words, the former was not in her proper place, and the latter was. Primâ facie, the Alvarado was in the wrong, and answerable for the injury sustained by the Avalanche. It is apparent from the evidence, that if the Alvarado had taken the centre of the channel, the collision would not have happened. There was nothing in the case to show that she could not have easily assumed that position. Nor was there any thing to show that the Avalanche failed to use ordinary care and diligence to avoid the collision. Upon this ground alone, unless there was an understanding that the boats should pass each other in a different manner than that provided by the statute, the verdict ought to be sustained.

But leaving the provisions of the statute entirely out of view, the verdict was still warranted by the evidence. Independent of these provisions, the managers of steamboats may, as respects themselves, make regulations for the passage of their boats. It is competent for them to waive their rights, under the statute, and adopt a different mode for their boats to pass each other. Whether such an arrangement will exempt them from the operation of some of the provisions of the statute, is another question. This is a controversy between the owners of the boats, and not one in which the people or third persons are interested. It appeared in evidence, that there was an usage among those engaged in the navigation of the river, by which boats approaching each other arranged by signals the mode in which they should pass; and that the officers of these boats were familiar with the usage, and had previously acted upon it in passing each other. The evidence tended to show, that signals were exchanged between the boats on this occasion, to the effect that each boat should pass to the larboard. When the boats struck, the Avalanche was close to the east bank of the river, and still bearing to the left; and it is a fair conclusion from the evidence, that if the Alvarado had inclined to the left, in obedience to the signals, the collision would not have happened. Upon a full examination of the evidence, we are satisfied with the finding of the jury. And we are also satisfied with the instructions given at the request of the plaintiff.

The last instruction asked by the defendant was properly refused. It assumed that the proper course for the Alvarado was along the east bank of the river, and that the Avalanche was in the wrong in taking the same direction. On the contrary, the true position of the Alvarado was in the middle of the channel; and it was the right of the Avalanche to take the eastern shore. In the exercise of that right, she could not be considered as in fault, if she used ordinary care to avoid a collision. If she was run upon the Alvarado purposely, or was so negligently managed at the time as to cause or contribute to the collision, the plaintiff could not recover. But if she was pursuing her proper course, and used ordinary diligence to keep clear of the Alvarado, the plaintiff was clearly entitled to maintain the action. The latter clause of the instruction was erroneous. It was not necessary for the plaintiff to declare as upon a breach of contract, even if the boats undertook to pass each other in a particular way, and the injury was occasioned by the failure of the Alvarado to carry out the arrangement. It was still a case of negligence, for which the defendant is liable in an action on the case.

The court properly qualified the defendant's instructions. Even if the Avalanche was out of her proper place in the river, it was nevertheless the duty of the Alvarado to use ordinary diligence to prevent a collision; and if the collision might have been avoided by the exercise of that degree of diligence on her part, the defendant would, notwithstanding, be answerable. It does not follow, because the Avalanche was in fault, that the Alvarado may not be guilty of negligence. A boat is not at liberty to cast herself upon another boat, merely because the latter may be out of her proper course and in that of the former. On the other hand, she is bound, in such a case, to make use of ordinary diligence to prevent a collision; and if a collision happens, and it appears that it could have been avoided by the exercise of that degree of diligence, her owner may be held answerable for the consequences. Butterfield v. Forrester, 11 East, 60; Lynch v. Nurdin, 1 Adolph. & Ellis, N. s. 29; Bridge v. The Grand Junction Railway, 3 Mees. & Wels. 244; Davies v. Mann, 10 Ib. 546; Beers v. The Housatonic Railroad, 19 Conn. 566.

Some of the instructions given at the instance of the defendant, were more favorable for him than the statute warranted, but he cannot complain of the error.

The judgment is affirmed.

*Judgment affirmed.*