BENJAMIN HARMAN, Plaintiff in Error, *v.* PHEBE HARMAN, Defendant in Error.

ERROR TO MENARD.

In an application for a divorce, it is not necessary to prove that the parties were *lawfully* married; proof of marriage is sufficient.

In civil actions, reputation, cohabitation, acknowledgments of the parties, etc., are sufficient evidence of marriage.

If a bill for divorce avers a marriage, which is confessed or not denied by the answer, it may be considered that an issue on this allegation is waived.

It is not required that a party should endure "extreme and repeated cruelty for two years," before a divorce can be obtained for that cause.

THIS cause was heard by WOODSON, Judge, at May term, 1854, of Menard Circuit Court.

The instructions, upon which the case was presented to this Court, are set out in the opinion.

T. L. HARRIS, for Plaintiff in Error.

E. B. HERNDON and J. H. COLLIER, for Defendant in Error.

SCATES, J. Bill for a divorce. It sets out a marriage in Missouri, in 1848. That for three years past, the plaintiff has been a notorious drunkard; that he treated defendant with repeated and extreme cruelty, tore her dress off, threatened to kill her, violently struck and bruised her face, and barred the doors of his house against her, and forbid her entering it again. That for three years he has used personal violence at divers times, and by threats kept her in constant dread, and for two years has failed to provide her proper means of support. That he has taken the elder of their two children, a little girl, with him to a grocery and kept her there all day.

The answer admits that he lived with defendant two years in Menard county in this State, denies that she ever performed towards him her marriage vows, denies his notorious drunkenness for three years, and that he treated her with extreme or repeated cruelty, and generally and particularly all the charges

of the bill. He admits " there are two children, the offspring of said marriage as stated in said bill," and submits that the court dispose of their custody. Upon this issue a jury was empanneled, and returned a verdict thât plaintiff was " guilty, in manner and form as in said bill alleged." The court decreed a divorce, and for costs, and gave the custody of the children to the mother.

The plaintiff brings the cause here, not upon the evidence, but upon certain questions of law presented upon instructions.

First. The court refused to instruct the jury " that unless they believe from the evidence, that complainant has been lawfully married to the defendant, they will find the defendant not guilty."

Second. " That if married in the State, a certificate of the marriage, from the county clerk, or the testimony of witnesses present at the time of the marriage, is necessary to prove the same : but if it is alleged that the marriage was out of the State, then it may be proved by the acknowledgment of the parties, their cohabitation, or other circumstantial testimony. But proof of marriage is essential before the jury can find the defendant guilty."

If I fully comprehend the import of the first instruction, it conveys the impression, that before the jury can find the party guilty, they must find and determine that there was a *lawful* marriage. If this be the true sense of it, it is not correct. I apprehend a mere *de facto* or cohabitation marriage, and an unlawful marriage, such as is void, as being within the degrees of consanguinity, or between white and colored persons, may be dissolved by decree, or declared void. Rev. Stat. 1845, p. 196, Sec. 1. Divorces shall not affect the legitimacy of the children, except in cases where the marriage is *declared void* on the grounds of a *prior* marriage.

The statement that the parties were lawfully married, had it even been made in the bill, would not require the proof of more than a marriage, and not of the legality of the marriage.

The second instruction presents questions of the necessity of *proof* of the *marriage*, and of the character and kind which is alone admissible to establish a marriage.

It was provided by an act of 1827, (see Acts 1827, p. 182, Sec. 5,) that no confession of the defendant shall be taken as evidence, unless the court or jury is satisfied that it was made in sincerity, and without fraud or collusion, to facilitate the divorce. This has been retained, and is now the law. Rev. Stat. 1845, p. 197, Sec. 5. " But any marriage which may have been celebrated or had in any foreign State or country, may be proved by the acknowledgment of the parties, their cohabitation, and other circumstantial testimony." Rev. Stat., same Section above.

Licenses arc required, and when certified by the minister or officer celebrating the marriage, they are to be filed, and a register of the marriages in this State is to be kept by the clerk in each county. The license or a certified copy of the registry is made evidence of the marriages in this State. Rev. Stat. 1845, p. 354, Sec. 6.

The former provisions are under the divorce, and this last is under the marriage act.

Under the criminal code it is provided that " the rules of evidence of the common law shall also, unless changed by this chapter, be binding upon all courts and juries in criminal cases." Rev. Stat., p. 186, Sec. 188.

By that chapter it is provided in relation to bigamy that " it shall not be necessary to prove either of the said marriages, by the register or certificate thereof, or other record evidence ; but the same may be proved by such evidence as is admissible to prove a marriage in other cases; and when such second marriage shall have taken place without this State, cohabitation in this State, after such second marriage, shall be deemed the commission of the crime of bigamy. Rev. Stat., p. 173, Sec. 121.

This has been changed by an act, (Act 1853, p. 203, Sec. 1,) and now, " the proof of the fact of either marriage shall not be otherwise made than by the legitimate record evidence of such marriage, and the parol testimony of a person or persons who were present at the celebration of such marriage, anything in the 121st Sec. of Chap. 30 of the Revised Statutes to the contrary notwithstanding: *Provided*, this act shall not be so construed as to exclude the necessary parol proof to identify the person of the accused with the record evidence in any case."

So the question of evidence of marriages is left by legislation. The common law is our rule where not changed by statute. These statutes do not apply to the proofs of marriages in civil causes.

While the defendant may not confess the *acts* alleged as grounds of divorce, he may still confess the marriage, so far as the statutes provide. This he has done in his answer very fully. This answer, or parts of it, may be read in evidence, in ordinary cases ; and we see no reason why in this case it may not be treated as any other plea which confesses and avoids—as waiving any issue on this allegation, and any proof to sustain it. It is confessed, and not being denied, it is unnecessary to prove it.

The proofs arc not before us, and we do not know what kind of proof was introduced, if any. But is it true, that no proof but the license, or certified copy of the registry of marriages, is admissible to prove a marriage in this State ? The statute has made these evidence, but has not excluded any other evidence

admissible at the common law. These were also admissible at the common law, and no new rule is thereby introduced. It is only a substitution of the licenses and registers made and kept by the civil officers in place of those of the ecclesiastical, which do not exist here as a part of our civil polity. 2 Stark. Ev. Part I, 698.

Bigamy, and adultery or criminal conversation, are the only two cases at the common law which required strict proof of the fact of marriage; 2 Stark. Ev. Part I, 352; Part II, 894; and even in these cases, it was doubted as to the exclusion of admissions of defendant. Ibid. Roscoe Cr. Ev. 310 to 313.

But in all other civil actions, reputation, cohabitation, the acknowledgement of the parties, etc., are sufficient evidence of the marriage. 2 Stark. Ev. Part I, 698, and note *a* 705; Mathews on Presumptive Ev. 272 to 275. So we conclude the instruction was erroneous in two particulars. First, by evidence alone of a marriage in fact, if celebrated in Illinois; and second, that marriage at all was necessary to be proven under the issue presented by this answer.

The third and last instruction I notice, and which the court refused to give as asked, is, " That unless the jury believe, from the evidence, that for the full space of two years before the commencement of this suit, defendant has been an habitual drunkard, *or for the same space of time* has treated her with extreme cruelty, they will find the defendant not guilty;" but the court struck out the words " for the same space of time," and gave it as modified. We think the decision of the court, and the instruction as modified, to be correct.

At the common law there were only four causes of divorce from the bands of matrimony, to wit: pre-contract; consanguinity, or relation by blood; affinity, or relation by marriage; and corporeal infirmity, or impotency; and two, *a mensa et thoro*, or bed and board, to wit: adultery and cruelty. 1 Black. Com. 146 ; 6 Bacon's Abridg. title " Marriage," 496 to 500; 2 Ga. 205.

We adopted the common law, but in 1827 (see acts 1827, p. 180–1,) acts were passed, declaring what causes should authorize a divorce from the bands of matrimony—among which are enumerated four of the six causes, to wit: pre-contract, impotency, adultery, and extreme and repeated cruelty, and to which were added two new causes, to wit: willful desertion or absence without reasonable cause for two years, and habitual drunkenness for the space of two years. The wording and punctuation of the act is, after the clause for willful desertion, " and for extreme and repeated cruelty, or habitual drunkenness for the space of two years." It is the same precisely in the

Revised Statutes of 1833, p. 233 ; except that the comma is left out after the word " cruelty " in the printed act. But in the original bill, as filed in the Secretary's office, the "," is to be found in each. The phraseology of the preceding part of the section, was retained identical, " That whenever a marriage has been, or hereafter may be contracted and solemnized, between any two persons, and it shall be adjudged," &c., that either party was impotent, or that either had a wife or husband, or either had committed adultery, or willfully deserted, " and for extreme and repeated cruelty, or habitual drunkenness for the space of two years." At the session of 1833, an act became a law, by failure of the Council of Revision to retain it, in which it was provided, " That in addition to the causes already provided by law for divorces from the bands of matrimony, courts of chancery shall have power and authority to hear and determine all causes for a divorce, not provided for by any law of this State." Rev. Stat. 1833, p. 234. Thus stood the law until 1845, when the legislature adopted and sanctioned a revision of the statutes, prepared by M. Brayman, Esq. and ordered its publication as embodying the existing statutes of a general nature. With what care it was prepared and revised by the compiler, we are not able to speak ; but that its adoption by the legislature was hasty, is a matter of history—and by the Council of Revision is a matter of personal knowledge to us, as members of it—and necessarily to both, for want of time. In this revision, all the enumerated causes are inserted in the first section in the same order as theretofore, with the additional cause of a conviction " of felony or other infamous crime."

The phraseology is changed in this act, but it is very evident that it became necessary to change it in relation to the clause respecting cruelty, on account of the change in the introductory clause of the section. Instead of the old phrase, " That whenever," was inserted " In every case in which," and then the provisions are identical to the end of the provision in relation to adultery, except, that in the punctuation at the end of each separate cause, a semicolon is adopted in place of a comma. The next clause changes " willfully deserts and absents " into " has willfully deserted and absented himself or herself from the husband or wife, without any reasonable cause for the space of two years ; or has been guilty of extreme and repeated cruelty, or habitual drunkenness for the space of two years." Here the " and for " is changed into " or has been guilty of " extreme and repeated cruelty, and by dropping the comma after cruelty, gives color to the supposed true reading contended for in this instruction. The 8th section retains the provisions literally, in relation to any other causes of divorce. Now

it is very apparent that the change in the introductory phrase in this section, made it necessary to drop " and " and insert " or "—for if retained, the reading would require the two years' desertion and extreme and repeated cruelty both, to constitute one ground of divorce. Thus showing a different and sufficient reason for a change of the words, without an intention of changing the sense or the provision in relation to this cause of divorce, we are relieved from all perplexity of adding " the space of two years," as a part or qualification of each cause of divorce. Rev. Stat. 1845, p. 196, Sec. 1.

This court has examined and criticised the printed statutes, and compared them with the enrolled bills, to ascertain their exact provisions, and the true intent of the legislature, in *Beecher et al.* v. *James et al.,* 2 Scam. 462; *Dutcher* v. *Crowell,* 5 Gilm. 445; *Moor* v. *Moss,* 14 Ill. 106.

There can be no more just or urgent occasion to do so than in this case, where it is contended that the party must suffer under treatment of " extreme and repeated cruelty," " for the space of two years," before she is entitled to relief from the *power* of a husband capable of such a perversion of his marital vows of loving, cherishing and protecting. There is no reason for such a change in the law. And no one, who understands the legal import of the word " *sævitiam,*" or cruelty, at the common law, would readily acquiesce or be brought to a conclusion that any additional probation was intended. There must be acts or threats which may raise a *reasonable apprehension* of bodily hurt; the causes must be grave and weighty, and show a state of personal danger incompatible with the duties of married life. It is not mere austerity of temper, petulance of manners, rudeness of language, a want of civil attentions, occasional sallies of passion, denials of little indulgencies and particular accommodations, and which do not threaten bodily harm. These are not legal cruelty. *Evans* v. *Evans,* 2 Haggard Cons. 311–12; *Head* v. *Head,* 2 Ga. 206; *Finley* v. *Finley,* 9 Dana, 52; 2 Kent Com. 126; *Barrere* v. *Barrere,* 4 John. Ch. 187. When we add to this danger, or reasonable apprehension of bodily harm, the requirements of the statute that it is to be " extreme and repeated," we should not readily believe that the legislature intended the party should stand in this real or apprehensive inconveniency of bodily peril for two years. Cruelty under the statute is of a more aggravated character than at common law; a *reasonable apprehension* of bodily hurt to life, health or member, when extreme and repeated, is sufficient, for " assuredly the court is not to wait till the hurt is actually done." *Evans* v. *Evans, ubi supra.*

Courts and juries must confine themselves to the causes recognized in the statute, and known to the law, and as thus defined and known. This court, in *Burkby* v. *Burkby et al.*, 15 Ill. 121, and in *Vignos* v. *Vignos*, 16 Ill. 186, have held that one instance of personal violence did not constitute a statutory cause, although coupled with abusive and derogatory language ; that the statute does not confer an unlimited discretion upon the courts to grant divorces. Nor would the 8th section of the act confer any power to grant divorces for any other causes than those enumerated in the act—unless it be construed as including the two causes known to the common law, not enumerated—of consanguinity and affinity. This is the rule of construction laid down in *Head* v. *Head*, upon an analogous case.

*Decree affirmed.*