## FRANK J. BOWMAN
### v.
## IDA M. BOWMAN.

*Divorce—Alimony* Pendente Lite—*Common Law Marriage—Sufficiency of Proof—Jurisdiction—Domicile.*

1. A common law marriage is a marriage " contracted and solemnized " within the meaning of our statute authorizing divorce.

2. To constitute a marriage *per verba de presenti* no particular words are necessary. It is sufficient if what is done and said evidences a present assumption by the parties of the marriage *status.*

3. Where, in an application for alimony *pendente lite*, the fact of marriage is practically the only point in issue, the proof required should only extend to probable cause, or a fair probability that the petitioner will maintain her allegation.

4. A married woman may be an actual resident of this State though she has no domicile here, and if while she is such actual resident, the offense which supplies the ground of divorce is committed, thereafter her actual residence becomes her separate and legal domicile.

5. In the case presented. it is *held:* That the evidence of a common law marriage furnishes proof sufficient to authorize the court to grant alimony and suit money *pendente lite;* and that the court below had jurisdiction under the statute.

[Opinion filed December 14, 1887.]

Appeal from the Circuit Court of Cook County; the Hon.
Murray F. Tuley, Judge, presiding.

Mr. L. M. Shreve, for appellant.

Courts of equity will rarely, if ever, allow either alimony or
solicitor's fees where the marriage is squarely controverted,
and never until a *prima facie* case is made, establishing the
right and overcoming the husband's allegation of facts impair-
ing the validity of the marriage.

The indiscriminate allowance of alimony would enable the
adventuress and blackmailer to prosecute her suit by the same
agency which the chancellor may give an injured and inno-
cent wife, when it is just and equitable.   Collins v. Collins, 71
N. Y. 269, 275; York v. York, 34 Iowa, 530; Lovett v. Lovett,
11 Ala. 769, 777.

Whether alimony shall be granted is a matter of law; how
much is a matter of discretion.   Wetsell v. Wetsell, 8 B. Mon.
50; Call v. Call, 45 Me. 407.

And this discretion is a judicial, not an arbitrary one.
Foote v. Foote, 22 Ill. 425; Foss v. Foss, 100 Ill. 576, 580;
Deenis v. Deenis, 79 Ill. 74; Blake v. Blake, 80 Ill. 523.

If it appears that the parties are not married, or that the
complainant is acting in bad faith, alimony *pendente lite* will
not be granted.   Collins v. Collins, 71 N. Y. 269, 275.

No presumption of marriage can be indulged by the
court, for it is admitted that illicit cohabitation existed for
years between the parties, and every such presumption is over-
come by prior illicit cohabitation, which is presumed to be con-
tinued.   Hebblethwaite v. Hepworth, 98 Ill. 126.

A promise to marry when promisor gets a divorce from
his wife, is void.   Naice v. Brown, 39 N. J. 133; Padock v.
Robinson, 34 N. Y. 643.   No court can grant a divorce ex-
cept for causes provided by statute.   Cook v. Cook, 56 Wis.
600; U. S. v. Hayes, 20 Fed. Rep. 710.

When jurisdiction has been so given by the law making
power for certain specified causes, as in the State of Illinois, it
excludes all other causes for divorce.

Our Supreme Court, conceding that such a marriage may be valid for certain purposes, has been reluctant in extending the *ægis* of the law to marriages usually known as common law marriages, even in cases of inheritance, dower and legitimacy. Hebblethwaite v. Hepworth, 98 Ill. 126.

The domicile of the husband is the domicile of the wife. His residence is hers, and from the 27th day of June, 1886, to the 5th of September, under the averment in the bill she was in legal contemplation a resident where her husband resided, at St. Louis, Missouri. Ashbaugh v. Ashbaugh, 17 Ill. 476; Davis v. Davis, 30 Ill. 180; Kennedy v. Kennedy, 87 Ill. 250.

Messrs. CASE & HOGAN, for appellee.

The law favors a presumption of marriage arising from evidence of an agreement between the parties. The extent of the rule is that where a cohabitation is illicit in its origin, a mere continuance of the cohabitation, under the same circumstances, a simple prolongation of the unlawfulness will not change its character. And yet the court will seize hold of the slightest circumstances indicating a change in their relations, and draw inferences favorable to matrimony. Fenton v. Reed, 4 Johns. 52; Senser v. Baur, 1 Penny. 452; Rose v. Clark, 8 Paige, 574; see especially, Yates v. Houston, 3 Texas, 450. See, also, Donnelly v. Donnelly, 8 B. Mon. 113.

Where the parties have manifested a desire to live in a matrimonial union, which the parties in this cause did upon their removal to Chicago, and not in a state of concubinage, and during their cohabitation there has been a time when they might lawfully have married, a jury will be justified in finding a marriage from the mere fact of continued cohabitation apparently matrimonial, although it was for some reason meretricious in the inception. The following authorities fully sustain this proposition: Fenton v. Reed, 4 Johns. 52; Van Buskirk v. Claw, 18 Johns. 345; Rose v. Clark, 8 Paige, 574; Caujolle v. Ferrie, 23 N. Y. 90; Betsinger v. Chapman, 88 N. Y. 487 to 499; Hynes v. McDermott, 91 N. Y. 451; Holabird v. Atlantic Ins. Co., 12 Am. L. R. (N. S.), 566; North v. North, 1 Barb. Ch. 241; Starr v. Peck, 1 Hill, 270; Donnelly

Bowman v. Bowman.

v. Donnelly, 8 B. Mon. 113; Blanchard v. Lambert, 43 Iowa, 228; State v. Worthingham, 23 Minn. 528; Dickerson v. Brown, 49 Miss. 357; Floyd v. Calvert, 53 Miss. 37–46; Jones v. Jones, 45 Md. 155; Yates v. Houston, 3 Texas, 433–450; Campbell v. Campbell, 1 Law Rep. (H. L.) Secs. 182, 201, 204, 212, 215; Breadalbane's Case, L. R., 1 Scotch Divorce Appeals, 182; De Thoren v. Attorney General, L. R., 1 App. Cas. 686; *In re* Taylor, 9 Paige, 611.

We think the following rules may be deduced from the cases cited:

. 1st. That an illicit connection is presumed to continue until there is evidence to the contrary.

2d. That where the parties have manifested a desire to form a matrimonial union, the presumption will be rebutted so as to make the question one of fact, by the slightest circumstance, and that a mere continuance of the cohabitation without any apparent change after the parties have the right to contract a valid marriage, will suffice to justify submission of the question of marriage to a jury, and the court should, under such circumstances, submit the question to the jury.

·3d. That where there is any evidence even of the slightest character to rebut this inference of continuance of an illicit union, the question is one of fact.

The cases are unanimous in support of the true doctrine that where the evidence discloses the fact that the parties desired a matrimonial instead of a meretricious connection the slightest circumstance should be held to afford sufficient evidence upon which to predicate a finding of marriage.

Where a presumption of marriage has once arisen from a cohabitation apparently matrimonial, it can be overthrown only by the most cogent proof. Hynes v. McDermott, 91 N. Y. 451; Morris v. Davies, 5 Cl. & Fin. 163; Piers v. Piers, 2 H. L. Cas. 331.

The defendant in error in this case bases her right for divorce not solely upon cohabitation and repute, but on a contract of marriage entered into between the parties hereto, after the divorce of the plaintiff in error, followed by a cohabitation and assumption of the marriage *status*. The law on that point is

clearly stated by the Supreme Court in the late case of Cart-wright v. McGown, 10 West. Rep. 592.

In the case at bar it was not necessary that there should have been a marriage ceremony; all that was required, and this was done, was a mutual agreement between themselves to live permanently in matrimonial relations. Consent and not ceremony made the marriage. The contract and not the evidence of it constitutes the marriage.

At common law, as held in this country, and until recently it would seem as generally understood in England, persons of suitable age might, by words of present consent, contract a valid marriage without the presence and intervention of a minister, and without any particular form of solemnization. A statute may, of course, take away this common law right, but this is not to be presumed. The right is not conferred by statute, but exists independent of it, and therefore it is held that the rule does not apply, that when a statute directs a thing to be done in a particular way, it is void if done in any other way. The forms required are directory and not prohibitory, and such statutes have always been construed as not rendering void marriages entered into without the observance of those forms. Port v. Port, 70 Ill. 484; Hebblethwaite v. Hepworth, 98 Ill. 129.

This is an appeal from the interlocutory decree only. We submit that a *prima facie* case was made out in the Circuit Court, and the court, as it had full power to do with or without statutory authority, granted alimony and solicitor's fees. McGee v. McGee, 10 Ga. 478; Dow v. Eyster, 79 Ill. 254; Griffin v. Griffin, 47 N. Y. 134; Perry v. Perry, 2 Paige, 504; Chairs v. Chairs, 10 Fla. 308.

The complainant at the time she filed the bill was an actual resident of the City of Chicago and County of Cook, and had been for more than one whole year past a resident of the State of Illinois. She became so at the request of the plaintiff in error, and he never solicited her to come to St. Louis, Mo., and live with him, but stated that he would come to Chicago and live with her. The adultery complained of in the bill was committed outside of the State of Illinois. In such a case the court will

have jurisdiction even though the residence in this State has not been for one whole year. Way v. Way, 64 Ill. 406. She was actually a resident of this State at the time the adulteries were committed by the plaintiff in error. It then confessedly follows that her then actual place of residence became her legal and separate domicile. Hopkins v. Hopkins, 15 N. H. 474; Dutcher v. Dutcher, 39 Wis. 651; Way v. Way, *supra;* Pate v. Pate, 6 Mo. Appeals, 49.

MORAN, P. J.    This is an appeal from an order allowing suit money and alimony *pendente lite* to appellee in her suit to obtain a divorce from appellant on the ground of adultery.

She alleged in her bill that she was lawfully married to appellant on June 27, 1886, and it appears from the statements of her affidavits, filed in support of her motion for alimony, that the marriage claimed by her to have been entered into, was what is known as a common law marriage. Appellant's objections to the decree are:

1st.    That a common law marriage is not such a marriage as the Legislature of this State has authorized the courts to dissolve by divorce, such a marriage not being one "contracted and solemnized," within the meaning of the statute on divorce.

2d.    That in this case there is not evidence sufficient to prove a marriage in fact, and that therefore no order for alimony should have been made.

3d.    That if there was a marriage in fact, then complainant on her marriage lost her domicile in this State, and took that of her husband, who is shown to be a resident and citizen of Missouri, and therefore the court in this State has no jurisdiction.

We will consider these objections in their order:

1st.    While the statute of this State on marriage does provide that marriages may be celebrated by certain ministers and officers, and requires a license, and imposes a penalty upon any such minister or officer as shall celebrate a marriage without a license therefor having first been obtained, yet the forms required are directory and not prohibitory, and such statutes have always been construed as not rendering void marriages entered into without the observance of those forms.

Bowman v. Bowman.

In Port v. Port, 70 Ill. 484, it is said by the Supreme Court: "We are inclined to the opinion, supported as it is by the statements of many of the most eminent text writers, as well as by the decisions of courts of the highest respectability, that, inasmuch as our statute does not prohibit or declare void a marriage not solemnized in accordance with its provisions, a marriage without observing the statutory regulations, if made according to the common law, will still be a valid marriage, and that, by the common law, if the contract is made *per verba de presenti*, it is sufficient evidence of a marriage." Also Hebblethwaite v. Hepworth, 98 Ill. 126.

If the marriage is valid it is indissoluble by the parties to it. They are by such marriage inseparable—man and wife. If, therefore, the contention of appellant that the courts of this State have jurisdiction to divorce parties only whose marriage was "contracted and solemnized," in accordance with the forms prescribed by the statute, that is, ceremonial marriages, then it follows that we may have a class of persons in this State who are validly married, whose children are legitimate, who legally enjoy all the rights and are bound by all the duties and obligations of the marriage contract, and who have no right to seek redress in the form of a divorce for violation of the contract; and this is a community where, in law, marriage is regarded as a civil contract or civil *status* merely, where it has, in view of the State, no sacramental character, and where it needs no ecclesiastical sanction.

We are of opinion to so hold would be against public policy, as it has been established by the legislation and common law of this State.

Even in England, where to constitute a valid and complete marriage it was necessary that it be made in the presence and with the intervention of a minister in orders, it was held that persons who had entered into a contract of marriage which amounted to no more than a marriage *per verba de presenti*, was valid to the extent that entitled a party to it to come to the consistory court for divorce. The Judge there said that he would hold in that "and all similar cases, that when there has been a fact of consent between two parties to become man

and wife, such is sufficient marriage to enable me to pronounce, when necessary, a decree of separation." Catterall v. Catterall, 1 Rob. 580.

In Harman v. Harman, 16 Ill. 85, though the exact point urged here was not under consideration, it is said in the opinion: "I apprehend a mere *de facto* or cohabitation marriage may be dissolved by decree."

It is suggested that this is mere *dictum*, as the marriage pleaded in that case, and admitted by the default, would be intended to be a marriage "contracted and solemnized" as required by law. But, if a *dictum*, the statement is in accord with the almost universal course of the courts in this country, for no case is to be found where the relief asked was refused on the ground that the marriage was a common law marriage.

We think the word "solemnized," as used in our statute, is not to be construed as meaning only a ceremonial solemnization, whether religious or official, but that for the purpose of divorce a marriage may be self-solemnized by the parties to it, and a contract between them which constitutes them man and wife is a marriage "contracted and solemnized" within the meaning of our statute authorizing divorce.

2d. Is a marriage in fact proved against the parties? As the case is presented, the marriage is the only fact in dispute between the parties. Appellee alleges in her bill that she was married to the appellant on the 27th of June. The bill is unanswered, and while there is no default entered against appellant, there is no issue made by the pleadings as to the alleged marriage.

In her affidavit in support of the motion for alimony *pendente lite* and suit money, appellee swears "that on the 27th day of June, 1886, the said defendant informed this affiant, the said Mary V. Bowman [appellant's former wife] had obtained a divorce from the said defendant in one of the courts of the City of St. Louis, and that he was then a free man and would marry this affiant. This affiant then requested the said defendant to marry this affiant, when said defendant said that he did not believe in marriage ceremonies, and that he would make her his wife in the presence of a witness, which he accordingly did on the said 27th day of June, A. D. 1886."

In another affidavit, subsequently made and filed in the same matter, she swears "that the said defendant did, on the 27th day of June, A. D. 1886, marry this affiant, and said defendant stated on that day to this affiant that he then and there would, as he then did, fulfil the numerous and repeated promises which he had been constantly making this affiant for months and years prior to his divorce. That on the last said day the said defendant stated to this affiant that he was the father of her children and would legitimize them, as he then did by marrying this affiant. Defendant also stated, on the last said date, to this affiant, that he was free then to make the children legally his, and for that reason, as well as his very great love for this affiant, did make this affiant then and there his wife."

These statements of appellee are controverted by appellant in two affidavits filed by him in said case. In his first affidavit he swears "that he was not, on the 27th day of June, 1886, in the City of Chicago, lawfully married to the plaintiff, and says that neither at Chicago on the date last mentioned, or at any other time or place, was the plaintiff in the above named cause married to the said defendant; and affiant further states and says, that he did not live and cohabit with the plaintiff in the above named cause from the 27th day of September, 1886, as husband of the plaintiff, and affiant says that each and every of the plaintiff's allegations of and concerning a marriage with the defendant as in her petition in this cause set forth and stated are wholly untrue."

In the second affidavit he says, "that he did not at 202 Webster Avenue, Chicago, enter into a contract of marriage to take effect at that time with the person who calls herself Ida M. Bowman, as in her affidavit stated, and that it is not true that he made her his wife in the presence of a witness on the 27th day of June last, or at any other time, and the statement so made is false and untrue."

It will be observed that appellee says in her affidavits that appellant made certain statements to her on the 27th day of June. That he stated to her that he was then free; that he would fulfil the repeated promises which he had been making prior to his divorce; that on said last named date he "stated

to this affiant that he was free then to make the children legally his, and for that reason, as well as his great love for this affiant, did make her then and there his wife." Appellant's affidavits do not contain an unequivocal denial of what appellee states. He first says he was not lawfully married to her at Chicago on June 27th or at any other time or place, and that each and every of her allegations, concerning a marriage, in her petition set forth and stated, are untrue. This is a mere denial, not of the facts, but of her conclusion from the facts. His second affidavit does not deny that he stated to her the matter which she swears to, but says that he did not at 202 Webster Avenue enter into a contract of marriage to take effect at that time as in her affidavit stated, and that he did not make her his wife in the presence of a witness on the 27th day of June or at any other time. Here is no denial that he stated to her the words which she swears in her affidavit he did state. It is as though he should say I do not deny that I made the statement sworn to, but I do deny that I was lawfully married, or that I made her my wife in the presence of a witness.

When it is remembered that appellant is a lawyer, and as we understand, drew his own affidavits, these equivocal denials gain additional significance.

But treating the affidavits as flatly, though inartificially, controverting the statements of appellee with regard to the marriage, there are statements of hers which are wholly undenied, and circumstances in the case practically admitted, which we think lend corroboration to her assertion of the marriage. It appears that an illicit relation commenced between appellant and appellee in the City of St. Louis, when appellee was only sixteen years of age, appellant being at that time a practicing lawyer and having a wife living. During the continuance of the relations of the parties at St. Louis two children were born to them and appellee states that appellant repeatedly promised that he would marry her as soon as he should be divorced from his then wife. Appellant does not deny that he made such promises.

Appellee swears that she moved to Chicago at his request,

and that after coming to Chicago, she, at his suggestion, called herself Ida M. Bowman so that when he married her the change of name would not be noticed. That she was always known in St. Louis by the name of Ida M. Clement.

These statements are not denied by appellant. Appellee has attached to her affidavit copies of letters and of a telegram. The telegram, which is dated the day after the divorce from his wife was granted and addressed to Mrs. I. M. Bowman, is: "My case is decided, decree granted, expect me Sunday morning." A letter of the same date, which announces that he is free! free!! and mentions the divorce, says: "You may expect to see me Sunday morning although it will be hard for me (I have traveled so far and so fast) to take the ride if I have to come back Sunday night; but I am so anxious to see you I will come if I can stay but for a day." This telegram and letter are not denied, and appellant admits that he did come to Chicago to see appellee on the Sunday mentioned, and that is the day on which she claims that he married her as detailed in her affidavit. He needed no freedom to meet her in continuance of the impure relation. As between them it was important only as permitting him to enter at once upon a pure one.

There are also letters from appellant to appellee after the date of the alleged marriage, which, while they are not verbally inconsistent with the theory of continued meretricious relations between the parties and the contemplation by him of a marriage to be entered into with appellee in the future, seem to us to be on the whole more consistent with the theory that appellant and appellee were married, and were soon to live together in the permanent enjoyment of that relation.

There are other circumstances shown in the affidavits filed, some of which make for and some against the theory of a marriage, but we do not regard any of them as of sufficient weight to modify the conclusion which, in view of the entire record, we feel compelled to draw from the facts above detailed. We are of opinion that the evidence furnishes proof of a marriage sufficient to authorize the court to grant suit money and alimony *pendente lite*. To constitute marriage *per verba de presenti* no particular words are necessary. If what is done and

said, evidences a present assumption by the parties of the marriage *status*, that is sufficient whatever may be the form of expression used. Stewart on Marriage & Divorce, Sec. 86.

The statements which appellee swears were made by appellant on the 27th day of June, when all impediments to a marriage between them had been removed, were sufficient to constitute a valid marriage between them, and while, for the purpose of this discussion, we treat appellant's evasive denial of the marriage as denials of the facts stated by her, we find in the fact of the promises of marriage made during the meretricious relation and in the immediate seeking of her upon the granting of the divorce and hailing her triumphantly with the statement of his freedom, circumstances which go far to render her claim of a marriage on June 27th probable.

This probability is strengthened by the natural presumption that a man who has sustained to a woman a libidinous relation and has children born in said relation whose paternity he acknowledges, and for whom he expresses affection and love (as appellant most profusely does in his letters to appellee), will seek the earliest moment after all impediment is removed to free his children from the stain of illegitimacy, and to convert the impure relation with their mother into one at once legal, honorable and respectable. It is to be remembered too, that upon this interlocutory motion, the question of marriage or no marriage is not definitely settled.

While in an application for alimony the fact of marriage, if denied, must be proved, yet where it is practically the only fact in issue on said motion as it is in this case, the proof should not be required to go beyond establishing probable cause, or a fair probability that the petitioner will maintain her allegations.

As was said by the New York Court of Appeals in Brinkley v. Brinkley, 45 N. Y. 184, when considering this question: "If there has been a binding contract of marriage, it is of public as well as private interest that it be shown and maintained. It is evident from what is before us that it can be shown and maintained only by professional skill and vigor, to secure which to the plaintiff pecuniary means are needed. She is without such means, and if the defendant is her husband he should provide them."

We are of opinion that, considering the fact that there is no answer to the bill, the record furnishes sufficient proof of marriage to authorize the court to enter the order for support and suit money, to enable appellee a fair opportunity to maintain her allegation on the final hearing.

3d.   Had the complainant at the time of filing her bill such a residence in the State as entitled her to sue here for a divorce.   The bill alleges that she is an actual resident of the City of Chicago and of the County of Cook, and is now and has been for one whole year last past, a resident of the State of Illinois, and that she was married to the defendant in Chicago, in June, 1886.

The bill does not state where the defendant resides, but does state that he is and has been for some years practicing law in the City of St. Louis.   It is further alleged in the bill that in July and August succeeding the marriage, the defendant committed adultery in Washington, and that at divers times subsequent to the marriage and prior to September 5, 1886, he committed adultery in St. Louis.   The bill was filed in January.   Though the jurisdictional facts are rather bunglingly stated in the bill, we gather from the allegations that complainant was, before her marriage, and continued to be thereafter and up to the filing of the bill, an actual resident of this State; that while she was such actual resident, the defendant committed adultery in Washington D. C., in July and August, and continued to commit adulteries, till September 5th, at St. Louis, Missouri.

If the injured party is an actual resident of this State at the time the offense is committed, and the offense is committed without the State, and such actual residence continues till the bill is filed, the court will have jurisdiction though the residence has not been for one year.   Way v. Way, 64 Ill. 406.

Counsel for appellant invites our attention to the evidence in this case which shows that appellant was at the time the bill was filed, and had been for more than twenty years, a resident of St. Louis, and he argues that such being the case, appellee took her husband's domicile immediately on her marriage.   If we may look to the evidence at all on this question, we may

regard the facts which are consistent with the allegations of the bill and sustain the jurisdiction as well as those which defeat it, and we find that while appellee was actually residing in this State, appellant, on September 23, 1886, married another woman in the State of New York, and that he lived with her in St. Louis, Missouri, until the date of filing the bill.

Now, granting that by a fiction of law the domicile of appellee, upon her marriage, became that of appellant in St. Louis, such fictitious domicile did not affect the fact of actual residence. It is said in Way v. Way, *supra*, that while a man may have several residences he can have but one domicile. There are authorities which seem to hold that residence and domicile are synonymous; that a wife, no matter where she in fact may abide, must in law be held to reside at the place of her husband's domicile. This theory is excluded by the terms of our statute. By force thereof a married woman may be an actual resident of this State though she has no domicile here; and if, while she is such actual resident, the offense which supplies the ground of divorce is committed, because of the "necessity of her separate and independent existence," thereafter her actual place of residence becomes her separate and legal domicile.

Of course such residence is meant as is not a mere visit or temporary sojourn, but is an abiding *animo menendi*. Hopkins v. Hopkins, 35 N. H. 474; Dutcher v. Dutcher, 39 Wis. 651; Way v. Way, *supra;* Pate v. Pate, 6 Mo. App. 49.

We are of opinion, therefore, that the facts of the case clothed the court with full jurisdiction; that there was no error in the decree, and that the same must be affirmed.

*Decree affirmed.*