(No. 26766.—

GRACE E. MURRELLE, Defendant in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(ORGAN BROTHERS COM-
PANY *et al.*, Plaintiffs in Error.)

*Opinion filed January 19, 1943—Rehearing denied March 10, 1943.*

Thomas C. Angerstein, and George W. Angerstein, (S. R. Harwood, M. J. Hannigan, and Thelma Brook, of counsel,) for plaintiffs in error.

Augustine J. Bowe, William J. Bowe, and John D. Casey, for defendant in error.

Mr. Justice Smith delivered the opinion of the court:

This case arose under the Workmen's Compensation Act. Plaintiffs in error seek to reverse an award of compensation made by the circuit court of Cook county to Grace E. Murrelle, whose husband died as a result of being bitten by a dog. There is no question raised concerning the injury, or the causal connection between the injury and the death. We will therefore confine our statement of facts to those which bear on the three controverted questions, (1) was deceased an employee of Organ Brothers Company, (2) did the accident arise out of and in the course of the employment, and (3) was Grace E. Murrelle legally married to deceased and hence entitled to compensation for his death.

The record shows that deceased was a lumber and building-material salesman, working for Organ Brothers Company, lumber dealers. He was employed in November, 1938, by Norman Rose, who was, at that time, sales manager of the company. Rose testified that deceased was under his direction and control. Instead of a salary, however, deceased was paid a commission of ten per cent of

the purchase price of any lumber or materials sold by him. He had no fixed territory but was allowed to seek out his own prospects wherever he found them. He had an assistant, G. C. Smith, whom he paid out of his commissions. His cards, bill forms, and sales forms bore the name of Organ Brothers Company. He reported to the office every morning, and was paid weekly; social-security deductions were made by the company from his earnings, but it does not appear whether or not they were turned over to the government.

In June, 1939, Patrick Organ, president of the company, succeeded Rose as sales manager. Deceased continued the same arrangement with him. Organ testified concerning the manner in which deceased's work was done. The record shows that deceased was primarily concerned with customers who were doing remodeling, financed by Federal Housing Authority loans. He would estimate the total cost of the improvement, and make the customer a contract price, including labor and all materials, even though some of the materials might have to be purchased from others than the Organ Brothers Company. The proceeds of the F. H. A. loans would be paid over to the company, who would distribute it among the laborers and the various vendors of materials used. The portion retained by the company would be credited to deceased's sales, and he would receive his commission of ten per cent thereon. If his estimate was too low on materials, he took the loss. If it was more than the actual cost, the extra profit was his.

Plaintiffs in error contend that deceased was an independent contractor and not an employee. The facts are that the company received all the money from the various jobs and made all the disbursements. Deceased normally received only his fixed commission. It was only where there was a mistake in judgment on his part that his compensation varied from that of a regular commission on the selling price of the materials sold.

On September 18, 1939, deceased and G. C. Smith drove into the company's lumber yard about noon. One of their customers was short a few pieces of lumber, and they, drove into the yard to pick it up and take it out to him. At that time the yard man was busy with a customer. While they waited for him, Smith went over and commenced to pet a watchdog which was chained in the yard. While he was petting the dog, deceased approached and the dog suddenly attacked him. Deceased's arm was severely lacerated, and although it was treated promptly, soon became severely infected. He died as the result of the injuries on November 18, 1939.

Grace E. Murrelle filed an application for adjustment of claim with the Industrial Commission on March 13, 1940, in which she alleged that she was the widow of the deceased. On the hearing before the arbitrator, Organ Brothers Company raised the question of the legality of claimant's marriage to the deceased. On review before the commission, the company introduced evidence tending to show that deceased and claimant were never lawfully married. The evidence in the record bearing on this question is as follows: Claimant testified that she came to Chicago in 1918, after divorcing her first husband, in Duluth, Minnesota. She had one child, a son, by her first marriage. In Chicago she met Murrelle. In January, 1922, they were married in Waukegan, Illinois, by a justice of the peace. Mrs. Murrelle could not remember the name of the justice who married them, or the witnesses who were present; she stated that no license was issued before the marriage, but after the ceremony the justice gave them a license and that this license is now lost. No record of it appears in the county clerk's office under the name of either spouse.

Five justices from Waukegan township were called by plaintiffs in error. They testified that they never married anyone without a license during 1922. There were numerous other justices in the county. Several of these justices

testified that they did not go to the trouble to write the names of the contracting parties in the marriage license. They expressed the opinion that marriages were valid even if the names were not correctly inserted in the licenses. The county clerk, who served as such during the year 1922, testified that he never issued any blank licenses. Three of his deputies testified similarly. All admitted, however, that during that period Waukegan established a reputation as a marriage center, with couples flocking in from surrounding territory for quick marriages, about twenty-five per cent coming from Chicago. Although all of the deputies and the clerk denied ever issuing licenses at their homes, they did admit they sometimes issued licenses at night and opened the clerk's office for that purpose. Like the justices, the clerk and deputies stated that they made no effort to verify the names given by the applicants.

Following the alleged marriage, Mrs. Murrelle and deceased lived together until his death. He supported her and also her son until the son became independent. No one appears to have questioned the validity of the marriage until plaintiffs in error raised the question in this case.

At the conclusion of the hearing before the arbitrator an award of $16.50 per week for 242 weeks and one week at $7.50 was made to claimant. The Industrial Commission, on review, found that an award was proper, but that claimant had failed to show that she was the widow of the deceased and entitled to compensation as such. The commission made an award of $400 to be paid to the special fund held by the State Treasurer, in accordance with the provisions of section 7(e) of the Workmen's Compensation Act. Claimant took the case to the circuit court for review by writ of *certiorari*. That court set aside the decision of the commission and entered an award in accordance with the decision of the arbitrator.

Defendant in error contends that plaintiffs in error, having failed to sue out a writ of *certiorari* to review

the decision of the Industrial Commission, are now precluded from questioning the commission's findings. In other words, she contends that when she sought review in the circuit court of a part only of the commission's decision, the only method whereby plaintiffs in error could preserve an objection to other findings in that decision was by suing out their own independent writ of *certiorari*. We do not so construe the statute. Section 19(f)(1) of the Workmen's Compensation Act (Ill. Rev. Stat. 1941, chap. 48, par. 156(f)(1)) provides that "The Circuit Court * * * shall by writ of *certiorari* to the industrial commission have power to review all questions of law and fact presented by such record." The only limitation on the scope of the review is that it must be confined to the record. When one party sues out a writ of *certiorari*, the entire record is brought up for review. It clearly was never intended that a "cross writ of *certiorari*" should be necessary in order for the other party to preserve his right to object to any question arising on the record or involved in the decision reviewed.

Although the entire record is before us it is not the province of this court to try the disputed questions of fact. We have repeatedly said the findings of the Industrial Commission on contested-fact issues will not be disturbed unless manifestly against the weight of the evidence. (*Plano Foundry Co.* v. *Industrial Com.* 356 Ill. 186; *Ford Motor Co.* v. *Industrial Com.* 355 id. 490; *Old Ben Coal Corp.* v. *Industrial Com.* 351 id. 572; *Landon* v. *Industrial Com.* 341 id. 51.) It is not for this court to weigh the evidence. *Vulcan Detinning Co.* v. *Industrial Com.* 295 Ill. 141; *Bailey* v. *Industrial Com.* 286 id. 623.

On the question whether deceased was an employee of plaintiff in error, there is no conflict in the evidence. Apparently there was no conflict of opinion as to deceased's status prior to the filing of the claim for compensation. Petitioner's former sales manager, Rose, testified to hiring

deceased, and to the fact that he, as sales manager, had the right to control deceased's work. Whether or not that right was exercised is immaterial; the existence of the right of control, and not its exercise, is the determining factor in deciding whether deceased was an employee or an independent contractor. *Van Watermeullen* v. *Industrial Com.* 343 Ill. 73; *Nelson Bros. & Co.* v. *Industrial Com.* 330 id. 27.

The fact that plaintiffs in error deducted social-security taxes from the commissions paid to deceased, and thereby indicated an election on their part to treat him as an employee, is significant in this case. Further, Patrick Organ, president of the company, called by claimant as an adverse witness, testified that Murrelle was "employed" by his company, and that, upon receiving notice from the Industrial Commission of the filing of claim by Mrs. Murrelle, he immediately forwarded the notice to the insurance company which carried the insurance on their employees. When called by his own attorney, it was objected that he was being called to impeach his own testimony; in reply, it was stated that the sole purpose of calling Mr. Organ was to show the nature and scope of Murrelle's employment, and to show that his duties did not require him to go near the dog. In the light of the entire record we are of the opinion that the commission was clearly justified in finding that Murrelle was an employee of Organ Brothers Company at the time of his injury, within the Workmen's Compensation Act.

The record also supports the finding of the commission that the accident arose out of and in the course of the employment. When such a finding is justified by the evidence, it is binding on the courts. (*Hydrox Chemical Co.* v. *Industrial Com.* 291 Ill. 579; *Chicago Dry Kiln Co.* v. *Industrial Board,* 276 id. 556.) Deceased was a salesman, and it was necessary for him to satisfy his customers if he was to be successful. His whole purpose in entering the lumber

yard was to render service to a customer, and thus further the interests of himself and the company. The dog which injured him was owned by the company. It was kept in the yard, and used as an instrumentality for furthering the interest of the company by protecting the yard. Murrelle's work took him into the yard within the scope of the danger. The sole eyewitness testified that Murrelle did nothing to aggravate the dog and increase the risk. There is also evidence that lumber of the size he was seeking was piled close to where the dog was chained. All this evidence amply supports the commission's finding, and we will not disturb it.

On the question of the marriage of defendant in error to deceased, the only evidence of value is her own testimony. She is positive in her statement that she was married; that a license was given them by a justice of the peace; that they lived together for seventeen years, during which deceased supported not only her, but also her child by a former marriage. Under normal circumstances this would be ample proof of marriage to entitle her to the benefits of the Workmen's Compensation Act. (*Western Coal and Mining Co.* v. *Industrial Com.* 296 Ill. 408.) The evidence offered by plaintiffs in error is entirely of a negative character. It does not exclude the possibility of a valid marriage. At best it serves only to cast doubt on this particular issue. It does not withstand analysis. Five justices of the peace testified that they never married couples without a license. There were many other justices in the county. No attempt was made to prove what their practices were. Most of those who testified admitted they did not concern themselves with the identity of the parties they were marrying. There was evidence that no license was recorded in Murrelle's name, or the name of the claimant; but it was also admitted that the license could have been issued under another name since it was not the practice to make an effort to establish the identity of the appli-

cants. There is nothing in the evidence which precludes the possibility of the deceased's having obtained a license prior to the day of his marriage, or the possibility that the license may actually be recorded under fictitious names. We do not see how the evidence introduced by petitioner in any way destroys the effect of claimant's positive assertion of her marriage, corroborated as it is by deceased's conduct over a period of seventeen years. In civil actions, except in actions for criminal conversation, marriage may be shown by reputation, the testimony of witnesses, or by circumstances. *Western Coal Co.* v. *Industrial Com. supra; Lowry* v. *Coster,* 91 Ill. 182; *Conant* v. *Griffin,* 48 id. 410.

The decision of the commission that claimant was not the widow of deceased was contrary to the manifest weight of the evidence and was not supported by the evidence. The judgment of the circuit court setting aside the decision and entering the award in favor of defendant in error was correct. That judgment is affirmed.

*Judgment affirmed.*