Eleni Stathos, Individually and as Adminstrator of the Estate of Thomas Stathos, Deceased, Plaintiff-Appellant, v. La Salle National Bank, as Trustee Under Trust Agreement Dated January 15, 1960 and Known as Trust No. 23923, Cynthia Stathos, a Minor, and Steven Stathos, a Minor, Defendants-Appellees.

Gen. No. 50,185.

First District, Second Division.

September 14, 1965.

Rehearing denied October 14, 1965.

Lee C. Korbakes, of Chicago, for appellant.

Mortimer, Ryan, McKay & Hoffman, of Chicago, for appellees.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a decree entered in the Circuit Court of Cook County which approved a report by a special commissioner which report recommended a decree in favor of defendants.

The original complaint alleged that a deed in trust had been executed by the appellant's husband, Thomas Stathos, sixteen days prior to their marriage, which deed conveyed real estate improved with a single family residence to the grantor for life with remainders to his two minor children. Within thirteen months following the date of the conveyance, the appellant's

husband died intestate. The original complaint further alleged that the conveyance in question was fraudulent and void insofar as appellant's marital rights were affected thereby, and she asserted, in this property, her marital rights of dower, homestead and widow's award.

The amended answer filed by the appellees alleged that the children were the lawful issue of an earlier marriage between the decedent and the mother of the children, by virtue of which the children claimed to be the lawful heirs of their father.

The reply of the appellant, the children's stepmother, denied the legitimacy of the children and denied the marriage of their parents.

It is the theory of the appellant that the evidence clearly shows "that the decedent husband executed the subject deed in trust on the eve and in contemplation of his marriage to the Plaintiff, that the conveyance was voluntary, that it was made without actual consideration, but for the purpose and with the intent of defrauding his intended spouse of the marital rights in the subject property she would otherwise have acquired, to wit: dower, homestead and widow's award." The appellant further contends that the appellees have the burden of establishing the legitimacy of the children since the appellant showed that the relationship between their mother and the appellant's husband began meretriciously. Thus it was the appellees' duty to show that the mother and father had married so as to legitimize the children.

The record shows that on January 15, 1960, Thomas Stathos conveyed to the LaSalle National Bank, as trustee, his home at 10322 South Campbell Avenue, Chicago, pursuant to a trust agreement whereby the settlor would keep the beneficial interest for life and the remainder to go to his minor children. The record also shows that on January 15, 1960, the same date

as the signing of the trust agreement, Thomas Stathos left Chicago for Greece. On January 31, 1960, sixteen days after signing the trust agreement, Thomas Stathos married the appellant Eleni Stathos in Tripolis, Greece. The special commissioner also found that Thomas Stathos had entered into discussion with the appellant's father concerning a marriage between him and the appellant as early as October, 1959, and that there was correspondence between Thomas and Eleni concerning this. It was also shown that Eleni Stathos met Thomas Stathos at the airport when he arrived in Greece. The report states as part of its findings of fact that, "Pursuant to said correspondence, Eleni Stathos and Thomas Stathos planned to be married in Greece following the arrival of Thomas Stathos." An exhibit was admitted which Thomas Stathos had filed with the Immigration Service before he left which was required to enable him to bring Eleni to America as his wife. This was a certification from the Metropolitan Life Insurance Company that he had $9,500 of life insurance in force with that company. The letter was dated December 29, 1959, seventeen days before the trust agreement was signed. This letter, along with other forms, was presented to the United States Immigration authorities in Greece, and there is a reasonable conclusion that the letter was obtained with the intention that it would be presented there for the purpose of having the appellant admitted to this country on a nonquota basis. It is more than reasonably inferable that Thomas Stathos had planned to marry the appellant before he signed the trust agreement. No other explanation has been offered as to the taking out of certain papers but that they were for the purpose of his bringing back the appellant from Greece as his wife.

The appellees rely on three findings of the special commissioner's report. They are:

"9. Sometime in September, 1959, Thomas Stathos consulted his attorney and instructed him to execute a Deed in Trust, and named the La Salle National Bank, a defendant herein, as trustee, conveying title to real estate owned by said Thomas Stathos, now deceased, commonly known as 10322 S. Campbell Avenue, Chicago, Illinois, legally described in the Amended Complaint herein.

"10. After repeated urging by his attorney, Thomas Stathos executed the deed in trust immediately prior to his departure for Greece on January 15, 1960.

"11. Thomas Stathos did not intend to defraud the Plaintiff by conveying his residence to a trustee for the benefit of his children. He sought to make such conveyance immediately following his divorce from a woman not the mother of the children and was determined to provide an estate for the children."

The appellees urge that since it was shown that the deceased entered into discussion concerning setting up a trust for the children before he determined to marry the appellant, they had shown that he did not execute the trust with an intent to defraud her of her marital rights.

"It is the settled law in this State that a voluntary conveyance by either party to a marriage contract of his or her real property, without the knowledge of the other and on the eve of the marriage, is a fraud upon the marital rights of the other party, and such conveyance may be set aside as fraudulent and void as against the party whose marital rights are precluded thereby. Bozarth v. Bozarth, 399 Ill 259; Dunbar v. Dunbar, 254 Ill 281; Daniher v. Daniher, 201 Ill 489." Moore v. Moore, 15 Ill2d 239, 241, 154 NE2d 256, 257 (1958).

403

The Supreme Court has stated, "Not every voluntary conveyance, however, is in fraud of the rights of the intended spouse. A conveyance made for the purpose of providing for the grantor's children, and not to defraud the wife or husband, where the advancement is reasonable, when considered with reference to the property of the grantor, will not be held fraudulent. [Citation omitted.]" Ellet v. Farmer, 384 Ill 343, 348, 51 NE2d 570, 573 (1943). We think the evidence clearly shows that the deceased intended to marry the appellant at the time he signed the trust agreement, and that in so doing he clearly deprived her of her marital rights in the property. The appellees have not shown that this action was reasonable when considered with reference to the property of the grantor.

While the Moore case, supra, speaks of the "marriage contract" it is clear that the phrase cannot be construed literally. As was said in the Ellet case, supra, "Although it is generally held that to render invalid a transfer of property prior to marriage as a fraud on the future wife's marital rights the conveyance must have been made in contemplation of the marriage, there is authority, as plaintiff points out, holding that if a conveyance is voluntary and without consideration, and if the intention of the grantor was to defraud of her marital rights any person whom he should marry, it is immaterial, so far as the validity of the transaction is concerned, that he had not yet selected any particular person as his wife."

 In the case at bar, while there had not been a formal engagement, there was certainly an understanding that the deceased was to marry the appellant. It does not matter here that if upon meeting her it was legally possible for him to refuse to go through with the ceremony. The transfer was made with the imminent prospect of marriage; the fact that at one time he might have had another reason for doing the

404

same thing is not controlling here. Under the circumstances it was for the appellees to show that the transfer was not made with the intent to defraud the appellant of her marital rights. We think they have failed to do this, and hold, therefore, that the finding of the special commissioner which was approved by the Court was against the manifest weight of the evidence. We think the evidence clearly shows that the trust deed was entered into for the purpose of keeping the appellant from having any rights in the property.

The appellees point out, however, that the appellant did not elect to take dower in the estate of her husband and is, therefore barred from choosing to do so now. Ill Rev Stats (1961) c 3, § 19. Her answer to this contention is set out in her reply brief:

> "There is no question but that at the time of the marriage between Thomas Stathos and the Plaintiff, Thomas Stathos was no longer seized of an estate of inheritance in the subject property, but was merely the beneficiary under the terms of an Illinois land trust with respect to the property in question; furthermore, the subject Deed in Trust, Plaintiff's Exhibit 16, expressly states the interest of each beneficiary thereunder to be personal property. Accordingly, the interest of Thomas Stathos in the subject property was an interest in personal property only, as to which the right of dower can in no event attach."

The appellant finds herself on the horns of a dilemma. On the one hand, she claims the transfer of the property is voidable as being against her marital rights, and on the other hand stating that the transfer was valid so as to make it unnecessary for her to choose dower in the property. We feel that appellant cannot claim the transfer to be good in one breath

405

and deny its validity in the next. She has instituted this suit on the basis that the transfer was voidable as to her, and we have so held. The appellant must, however, act in consistency with her theory of the case. If she is claiming the transfer is void, then she must act as if it were void and elect to take dower. We feel the appellees' point here is well taken, and hold that the appellant is not entitled to dower as she did not elect to take it within the statutory period.

■ The appellant is, however, entitled to her other marital rights. No point is made here of the widow's award; apparently sufficient assets were discovered after the institution of this suit so that the matter does not arise here. As to the right of homestead in the property, the appellees claim that the appellant abandoned the premises so that she cannot make her claim at this point. The record shows that on the petition of the appellees, the Court below ordered the sale of the home, that the appellant objected to this sale at the time the matter was raised, and did not leave the premises until after the Court below approved the sale of the property. Under the circumstances, it cannot be said that she left the premises voluntarily so as to have waived her right to homestead. She is, therefore, entitled to $2,500 in lieu of the homestead rights provided by statute. Ill Rev Stats (1961) c 52, § 8.

The appellant, in her amended complaint, charges that the minor appellees are illegitimate and, therefore, not entitled to any part of their father's estate. The evidence shows that at the time the eldest child was conceived, the deceased, Thomas Stathos, was not married to the child's mother but to his first wife. Thomas Stathos however was divorced from his wife shortly thereafter and both he and the children's mother told his family that they had been married. They lived together until she died some years there-

after, during which time they had always held themselves out to be man and wife. None of the members of the Stathos family were present at the wedding as they did not approve of the match. The children's mother was not a member of the Greek Orthodox Church, and this, along with the fact that a child was to be born to the couple at the time they were married led to their disapproval of the union. Several members of the family testified, however, that the couple had said they were married in a civil ceremony, but no one could remember in what state such wedding was said to have taken place.

Since both the participants to this wedding are now dead, there seems no way of determining where or precisely when they were married. The appellant argues that the proof shows that the relationship of the children's parents began illicitly and states that this overcomes the presumption of legitimacy of children. She urges on this court a rule which would require the children to produce some documentary proof of a wedding or a witness thereto in order to establish their legitimacy. The appellees state that they brought forth sufficient evidence to establish that a marriage took place. As such evidence, they point to the statements by the parties to this marriage to that effect; they also point to the fact that they lived together as man and wife until the woman died.

■■ Neither party has cited cases which are convincing when applied to these circumstances. After considering the matter, we feel that the appellees sufficiently established that a marriage took place between Thomas Stathos and the children's mother. No one knows where the marriage took place, and it would be impossible for the appellees to check the records of every person authorized to perform marriages in every state in the mid-west. While the appellees' proof is not the most convincing, we feel that

when a man and woman say they are married and live together as man and wife until death parts them, there is a reasonable presumption that they in fact are married. If one of the parties to this marriage were still alive, we might hold differently and rule that some documentary evidence would be necessary. In such a case, it would be reasonable to assume that a party to a marriage would remember where the ceremony took place, but here no one has any idea where this ceremony occurred. Thomas Stathos' cousin said she thought they said it took place in Michigan or Wisconsin or one of the neighboring states. We hold that the appellees furnished sufficient evidence to establish the marriage in question.

The decree is affirmed in part and reversed in part with directions to enter a decree not inconsistent with this opinion.

Order affirmed in part and reversed in part, with directions.

BURKE, P. J. and LYONS, J., concur.