GAYLE PATEK, Plaintiff-Appellee, *v.* LOUIS F. PEICK *et al.*, Defendants-Appellants.

First District (1st Division)    No. 78-1397

Opinion filed July 16, 1979.

David Mathews, of Carmell and Charone, Ltd., of Chicago, for appellants.

Donald T. Bertucci, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiff brought this action in the trial court against the administrator and board of trustees of Local 705 International Brotherhood of Teamsters Pension Trust Fund seeking a declaratory judgment and money damages due to the trustees' alleged wrongful denial of her application for pension benefits as the surviving spouse of a union member. Both plaintiff and defendants moved for summary judgment in the trial court. Each of these motions was based upon a stipulation as to the facts necessary for a resolution of the motions. The trial court granted plaintiff's motion for summary judgment and ordered the defendants to approve plaintiff's application for pension benefits. From this order defendants now appeal.

On appeal, defendants made the following contentions: (1) that this court should vacate a stipulation of fact agreed upon by the parties in the trial court and remand the cause for further proceedings; (2) that the plaintiff and the deceased union member had not been married in

accordance with Illinois law; and (3) that, in any event, the trustees did not act arbitrarily or capriciously in determining that the plaintiff and her putative spouse had no valid marriage under Illinois law.

We affirm.

As indicated by the record, the pertinent facts before the trial court at the hearing on both motions for summary judgment were contained in a stipulation of facts filed in the trial court along with each motion. According to the stipulation, article 5, section 2 of the Local 705 Pension Trust Agreement provides that all questions of whatever character in connection with the trust fund shall be submitted to the trustees for decision and that their decision shall be final. The stipulation went on to indicate, in relevant part, that at the time of his death Frank Patek was a member of Local 705, was employed by United Parcel Service, and had fulfilled the age and service requirements for a normal retirement pension under the Pension Plan and Trust Agreement of the Local 705 Pension Trust Fund. The stipulation further indicated that on October 9, 1974, Gayle Patek filed an application with the administrator of the Local 705 Pension Trust Fund pursuant to section 2.04 of the Local 705 Pension Plan which provides:

> "If an employee dies on or after July 1, 1971 and meets all of the requirements for a normal retirement pension except that he had not retired or made application, then his surviving spouse shall receive a pension for 120 months or until the spouse's death, whichever is earlier, * * * provided that the spouse was married to the employee for at least 1 year immediately preceding the employee's death."

The administrator denied plaintiff's application and plaintiff appealed that ruling to the board of trustees. As indicated by the stipulation, the board of trustees, having regularly and consistently interpreted the phrase "surviving spouse" to mean a spouse as determined by the laws of the State of Illinois, denied the application on the grounds of insufficient proof that Gayle Patek was the surviving spouse of Frank Patek.

The stipulation then listed the evidence of her marriage that Gayle Patek presented at the hearing before the trustees. Among the documents presented were the following: a deed dated August 25, 1962, conveying real estate located at 2702 South Ridgeway Avenue, Chicago, Illinois, to "Frank Patek and Gayle Patek, his wife, as joint tenants;" joint tax returns for Frank Patek and Gayle Patek for the years 1969, 1970, 1971, 1972, 1973, 1974 inclusive; documents from the social security administration that referred to Gayle Patek as Frank Patek's widow; a 1962 mortgage document listing Gayle Patek as Frank Patek's wife; a receipt signed by Mrs. Gayle Patek, as wife and beneficiary, for the life insurance proceeds from a policy of insurance maintained by United Parcel Service for the

benefit of Frank Patek; a loan book, real estate tax bill, installment note and a homeowner's policy all in the joint names of Frank and Gayle Patek. The stipulation also indicated that the deceased's brother, Rudolph Patek, appeared at the hearing before the board of trustees and indicated the following: that in the latter part of 1951 he received a letter from Frank Patek in which Frank Patek stated that he had recently married Gayle Patek; that between August 20, 1951 and the date of Frank Patek's death, Rudolph Patek and his wife visited Frank and Gayle Patek in their home in Chicago, Illinois; that Frank and Gayle Patek stated to him that they were husband and wife; and that Frank and Gayle Patek lived together as husband and wife until Frank Patek's death. Gayle Patek also appeared before the board of trustees and stated that she had married Frank Patek in a civil ceremony before a justice of the peace near Knoxville, Tennessee, on August 20, 1951. She could not, however, produce a copy of the marriage certificate.

We will first consider appellants' contention that Gayle Patek and Frank Patek had no valid marriage under Illinois law. They argue that recent case law indicates that if one of the parties claiming a marriage is alive, a marriage certificate must be produced in order for the marriage to be deemed valid. They cite *Stathos v. La Salle National Bank* (1965), 62 Ill. App. 2d 398, 210 N.E.2d 828, and *In re Estate of Nowak* (1970), 130 Ill. App. 2d 573, 264 N.E.2d 307. In *Stathos*, the widow of a deceased man challenged the right of the decedent's children to share in his estate. The widow argued that the children were illegitimate and the children contended that they were the lawful issue of a prior marriage between the decedent and their natural mother, also deceased. As evidence of a prior marriage, the children pointed to statements by the decedent and their mother that they had been married and the fact that the decedent and their mother lived together as man and wife until their mother died. In holding that the children sufficiently established a marriage between their mother and the deceased, the court stated:

"No one knows where the marriage took place, and it would be impossible for the appellees to check the records of every person authorized to perform marriages in every state in the mid-west. While the appellees' proof is not the most convincing, we feel that when a man and woman say they are married and live together as man and wife until death parts them, there is a reasonable presumption that they in fact are married." (62 Ill. App. 2d 398, 407-08, 210 N.E.2d 828, 833.)

However, the court went on to state by way of *dicta*:

"If one of the parties to this marriage were still alive, we might hold differently and rule that some documentary evidence would be necessary. In such a case, it would be reasonable to assume that

a party to a marriage would remember where the ceremony took place, but here no one has any idea where this ceremony occurred." (62 Ill. App. 2d 398, 408, 210 N.E.2d 828, 833.)

In *Nowak*, one of the issues before the court on appeal was whether a marriage may be proved by evidence which does not include actual proof of the ceremony. Citing the following evidence, the court noted that the proof presented was sufficient to establish the marriage:

"Herman and Irene Nowak were married, divorced, and then resumed living together after a short period of time. Both parties are now dead and no record of a marriage can be found, nor can any person be found who can be said to have witnessed the marriage. Yet the parties did claim to have been remarried on a trip to the western states. Such a trip was in fact taken by them at the time they claimed to have been remarried. They resumed living together after returning from the trip, and continued to so live until their deaths. They held themselves out to the community and to friends and relatives as being remarried. Real estate was conveyed to them as husband and wife in joint tenancy. Exhibits including sales slips, insurance contracts, census records, savings accounts, personal property tax returns, hospital consent forms and income tax returns, were indicia of their husband-and-wife relationship. In all phases of day to day activity, the parties acted in a manner fully consistent with a ceremonial marriage." (130 Ill. App. 2d 573, 577-78, 264 N.E.2d 307, 310-11.)

■■ We are aware that, unlike the instant situation, in *Stathos* and *Nowak* both parties to each of the disputed marriages were deceased and thus unavailable to testify as to the validity of the marriages. However, those cases do not stand for the proposition that a marriage certificate is necessary to prove a marriage if both parties or one of the parties to the marriage is alive. Indeed, case law indicates exactly the opposite. (See *Western Coal & Mining Co. v. Industrial Com.* (1921), 296 Ill. 408, 129 N.E. 779; *Murrelle v. Industrial Com.* (1943), 382 Ill. 128, 46 N.E.2d 1007.) Moreover, section 409 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 409) indicates that a foreign marriage may be proved without the presentation of a certificate of marriage. That section provides:

"A marriage which may have been celebrated or had in any foreign state or country, may be proved by the acknowledgement of the parties, their cohabitation, and other circumstantial testimony."

Section 409 reflects the common law rule stated in *Harman v. Harman* (1854), 16 Ill. 85, that in all civil actions other than bigamy, adultery or criminal conversations, "reputation," cohabitation, the acknowledgement

of the parties, etc., are sufficient evidence of the marriage. (16 Ill. 85, 88.) Clearly, the instant marriage could be proved without evidence of the certificate of marriage.

■■ Appellants next point out that under the terms of the trust agreement, the trustees are empowered to resolve all controversies under the agreement and that their decision is final and binding on all the parties. They further note that a court will not upset the trustees' determination unless such a determination is arbitrary and capricious (see, *e.g., Mogge v. District 8, International Association of Machinists* (7th Cir. 1971), 454 F.2d 510) and contend that in light of the evidence presented to the board, the board's decision was not arbitrary or capricious. We disagree. In addition to her own testimony that she and Frank Patek had been married in a civil ceremony in Knoxville, Tennessee, the plaintiff presented bills, an installment note, a home-owner's policy, and a loan book in the joint names of herself and Frank Patek. She presented a deed, joint tax returns, documents from the social security administration, a mortgage document, and a receipt for life insurance benefits all of which listed her as the wife of the decedent. Additionally, there was the testimony of the deceased's brother that he and his wife visited the plaintiff and Frank Patek in their home in Chicago where they announced that they had been married and were living together as husband and wife. The above evidence clearly reflects that the parties acknowledged the fact that they were married, that they cohabited, and that they held themselves out to the community as being married. When the above evidence is considered in light of the fact that not a scintilla of evidence was presented to the board contradicting the above facts, we conclude that the trial court correctly determined that the decision of the board was arbitrary and capricious.

Defendants next contend that this court should vacate a stipulation of fact filed in the trial court. That stipulation states that Frank Patek had fulfilled the age and service requirements for a normal retirement pension and was filed together with the parties' motions for summary judgment. We also note that defendants' answer to the complaint for declaratory judgment admits that Frank Patek had fulfilled the age and service requirements for a normal retirement pension. At no time did defendants question the above stipulation in the trial court. They raise this contention for the first time on appeal.

■■ There are numerous reasons which compel us to reject defendants' contention and to leave the stipulation of fact intact. The primary reason we must reject the defendants' argument is that the accuracy of the above stipulation was never raised in the trial court. Under such circumstances it may not be considered on appeal. (*Rosee v. Board of Trade* (1976), 43 Ill. App. 3d 203, 356 N.E.2d 1012.) In addition, the facts upon which

defendants rely to question the accuracy of the above stipulation are contained in an affidavit filed for the first time in this court. The facts contained therein are *dehors* the record and as such cannot be considered in this appeal. *Keehner v. A. E. Staley Manufacturing Co.* (1977), 50 Ill. App. 3d 258, 365 N.E.2d 275.

■■ Moreover, even if we could consider defendants' contention that the stipulation be vacated, we could not vacate the stipulation. The stipulation stating that Frank Patek had fulfilled the age and service requirements for a normal retirement pension was attached to the motion for summary judgment. Never during the course of the proceedings before the trial court was the accuracy of the stipulation ever raised. As already noted, the efficacy of the stipulation is raised for the first time on appeal. It is well settled that a party will not be relieved from a stipulation in the absence of a clear showing that the matter stipulated is untrue and then only when the application is seasonably made. (*In re Estate of Moss* (1969), 109 Ill. App. 2d 185, 248 N.E.2d 513.) Without question, a request for relief from a stipulation made for the first time on appeal is not seasonably made.

Defendants vigorously argue that the stipulation is untrue and that to leave it intact would serve as an injustice to the other members of the fund, unjustly enrich the plaintiff, and make the trustees personally liable for the amount of the judgment. While we understand defendants' concern, we are bound by the precedents previously cited. Moreover, if indeed the stipulation is untrue, the possibility of a collateral attack could arise since the beneficiaries were not parties to the judgment herein, and the trustees, although parties to the judgment herein, were parties in their representative capacity only.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.