*In re* ESTATE OF EARL J. BAILEY, Deceased.—(MARIE BAILEY, Petitioner-Appellant, *v.* VELMA H. BAILEY, Adm'r of the Estate of Earl J. Bailey, Respondent-Appellee.)

Fifth District    No. 80-378

Opinion filed June 23, 1981.

Stone & Stone, of Sullivan, for appellant.

Jacques W. Scott, of Bethany, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Velma H. Bailey, respondent-appellee, was granted letters of administration in the Circuit Court of Shelby County. Marie Bailey, petitioner-appellant, filed a petition to vacate the appointment of Velma Bailey as the administrator of Earl J. Bailey's estate. The trial court denied petitioner's request. Marie Bailey appeals.

After Earl Bailey's death, without issue, Ida Venie Bailey, decedent's mother, filed a petition to have letters of administration issued as provided in section 9—4 of the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 9—4). In the petition Marie Bailey was not listed as decedent's wife and heir-at-law. Velma H. Bailey was appointed administrator pursuant to Ida Venie Bailey's nomination (Ill. Rev. Stat. 1979, ch. 110½, par. 9—3(e)). A citation to discover assets was issued to petitioner, which was her first notice that Earl Bailey's estate had been opened. On April 2, 1979, petitioner instituted this action to vacate respondent's appointment. Respondent defended on the ground that petitioner was not the wife of decedent and therefore not entitled to letters of administration.

Under the statutory preferences established in the Probate Act, the first preference to act as administrator is given to a surviving spouse or any person nominated by the spouse. (Ill. Rev. Stat. 1979, ch. 110½, par. 9—3(a).) Surviving parents and their nominees are fifth in order of preference. (Ill. Rev. Stat. 1979, ch. 110½, par. 9—3(e).) If petitioner could establish that she was the wife of decedent, she would be entitled to have respondent's nomination vacated in light of the mandatory preferences established in section 9—3. *In re Estate of Morrissey* (1976), 38 Ill. App. 3d 981, 349 N.E.2d 642.

Both parties agree that two issues are central to the resolution of this case. First, was petitioner properly precluded from testifying as to her relationship with the decedent under section 2 of the Evidence Act (Ill. Rev. Stat. 1979, ch. 51, par. 2)? Second, was the trial court's ruling that there was insufficient proof of petitioner's ceremonial marriage to decedent against the manifest weight of the evidence?

Petitioner's testimony concerning her marriage to decedent was objected to by respondent on the ground that she was barred from testifying by section 2 of the Evidence Act inasmuch as her testimony was adverse to the admitted heirs. The trial court sustained the objection, ruling that her heirship need be proved by noninterested witnesses.

Marie Bailey testified in her offer of proof that she first met Earl Bailey in Missouri in 1944. After decedent was discharged from the service he started dating petitioner. On March 17, 1948, petitioner testified that she and decedent went to a little town close to Searcy, Arkansas, and were married by a justice of the peace. There were several people present at the ceremony but they were other couples waiting to get married, their identity being unknown to petitioner. The marriage took place at the house of the justice of the peace in a small room. The ceremony was witnessed by two ladies and a man, one of the ladies being the justice's wife. Petitioner further testified that she could not remember the name of the justice. Their marriage license had been lost during the course of moving in 1961.

■■■ Both Arkansas and Illinois recognize the validity of a ceremonial marriage even though no license is obtained. (*De Potty v. De Potty* (1956), 226 Ark. 881, 295 S.W.2d 330; *Haderaski v. Haderaski* (1953), 415 Ill. 118, 112 N.E.2d 714.) Neither Arkansas nor Illinois recognize common law marriages.

Petitioner argues that the Evidence Act does not bar her testimony as to her marriage with decedent. Reliance is placed on section 2(4). The Act was amended in 1973 and provides in part that,

"In the trial of any civil action in which any party sues or defends as the representative of a deceased or incompetent person, no adverse party or person directly interested in the action shall be

allowed to testify on his own behalf to any conversation with the deceased or incompetent person or to any event which took place in the presence of the deceased or incompetent person, except in the following instances:

\* \* \*

(4) No person shall be barred from testifying as to any fact relating to the heirship of a decedent." Ill. Rev. Stat. 1979, ch. 51, par. 2(4).

Respondent claims that the above exception, which has not heretofore been construed, does not apply to the proffered proof. It is asserted that there is an absolute bar to testimony concerning conversations or events which took place in the decedent's presence to which the decedent could have testified. Respondent argues that this position is supported by authority. (See Raymond, *1973 Legislative Changes Affecting Probate and Tax Law*, 62 Ill. B.J. 342 (1974).) Petitioner asserts that the heirship exception is applicable and cites a student note (*Illinois' Amended Dead Man's Act*, 1973 U. Ill. L.F. 713) appearing in the University of Illinois Law Forum. It is claimed that the 1973 amendment was meant to overturn a line of cases beginning with *Laurence v. Laurence* (1896), 164 Ill. 367, 45 N.E. 107, and including *In re Estate of Diak* (1966), 70 Ill. App. 2d 1, 217 N.E.2d 106, and *In re Estate of Priebe* (1969), 108 Ill. App. 2d 407, 248 N.E.2d 140.

We have examined the applicable authorities and find that petitioner should have been allowed to testify as to her marriage to decedent.

The primary reason for the prohibition of testimony in the Evidence Act is to protect decedents' estates against fraudulent claims. (*In re Estate of Diak* (1966), 70 Ill. App. 2d 1, 217 N.E.2d 106.) In spite of this salutary purpose, such statutes have been widely condemned. See 2 Wigmore, Evidence §578 (Chadbourn rev. 1979).

The *Laurence* case is an example of the harsh result obtaining from a strict application of the Dead Man's Act. In *Laurence* decedent died intestate and the alleged wife petitioned the court for half of the decedent's estate. The trial court allowed the wife to testify at trial as to her marriage to the decedent. The supreme court held that the wife's testimony should have been excluded. Inasmuch as the wife was unable to prove her marriage by independent testimony, the judgment for the wife was reversed. The court said that, "\* \* \* where, among those who are conceded to be the heirs, there arises a controversy as to the distribution of the estate among them, they may testify, as such testimony does not tend to reduce or impair the estate among them. Appellee was not an heir until she established the marriage which she alleged and which was denied by the heirs, and until such marriage was established by proof or conceded she was a stranger to the estate and incompetent to testify, \* \* \*." (164 Ill. 367, 373.) The court assumed that a proceeding to

establish heirship was a civil proceeding governed by the Act. *In re Estate of Diak*, 70 Ill. App. 2d 1, 6, 217 N.E.2d 106, 109.

We question whether a proceeding to establish the proper administrator of an estate is within the scope of the Act. Such a proceeding does not directly reduce or impair the decedent's estate. Application of the testimonial bar of the Act to situations such as this leads to a race to the court house to be appointed or nominate an administrator. Once the appointment is made, any party wrongfully omitted from the selection must shoulder the onerous burden of proving heirship without the benefit of his own testimony.

■■ Furthermore, we believe that by enacting section 2(4) the legislature intended to change the rule of *Laurence* which applied the Act to proceedings to establish heirship. The language of the amendment is reasonably clear, and no other purpose can be discerned in enacting the amendment. Respondent's interpretation would read the general rule, that interested parties may not testify as to transactions which took place in the presence of decedent, into the exception contained in section 2(4). Such an interpretation would render section 2(4) a nullity. We cannot presume that the legislature intended such a result. Respondent's single authority on the subject does not support her contention. We conclude that petitioner should have been allowed to testify as to her marriage to decedent.

The trial court further held that in the absence of Marie Bailey's testimony there was insufficient evidence of a ceremonial marriage. We disagree.

The Act pertains "* * * only to the competency, as witnesses, of parties to the suit or who are interested in the result. It does not render inadmissible conversations with, or statements made by, deceased persons, when proved by competent witnesses." (*Creighton v. Elgin* (1944), 387 Ill. 592, 605, 56 N.E.2d 825.) Therefore, petitioner could prove her marriage not only by her testimony but by the testimony of disinterested witnesses.

Claude Langsford testified to the following fact. He was president of the High State Bank in Dalton City, Illinois. He has lived in Dalton City for 21 years and knew Earl and Marie Bailey for approximately 20 years. Earl Bailey introduced Marie to Langsford as his wife. Decedent told Langsford in response to a questionnaire that he had been married to petitioner in Arkansas. Langsford testified that the reputation of the Baileys in the community was one of husband and wife. The checking accounts and loans with the bank were jointly held by petitioner and decedent as husband and wife.

Peg Underwood testified that she had known Marie and Earl Bailey since 1962 when she moved to Dalton City. She saw the Baileys frequently

and visited with them. Earl Bailey told her at one time that he and Marie Bailey had been married in Arkansas. Earl Bailey consistently referred to Marie Bailey as his wife in the presence of others. Underwood testified that the reputation of Earl and Marie Bailey was that of husband and wife.

Anne Underwood testified that she had known Earl and Marie Bailey since 1961. She was a good friend of the Baileys and she remembers Earl introducing Marie as his wife and referring to her as his wife. Anne Underwood testified that the reputation of Earl and Marie Bailey in the community was that of husband and wife.

Millie Harris testified she had known Earl and Marie Bailey since 1965. Marie Bailey had been introduced to Harris by Earl Bailey as his wife. Harris said that Earl Bailey frequently referred to Marie Bailey as his wife and that he told her that he was married to Marie in Arkansas.

Katherine Feist testified that she had known Earl and Marie Bailey since they moved to Dalton City in 1961. She ran a grocery store from 1965 to 1978 where the Baileys held a joint account. Feist believed that the reputation of the Baileys in the community was that of husband and wife.

Mildred Karch testified that she lived in Dalton City from 1967 to 1975. Previously, she lived just outside of Dalton City. She ran a restaurant and tavern in Dalton City for several years. She got to know both of the Baileys as friends and they traveled together. Karch testified that Earl Bailey would introduce Marie as his wife to other people. The reputation of Earl and Marie Bailey in the community was that of husband and wife.

Margaret Lewis testified that she is the sister of Marie Bailey and had known Earl Bailey before his enlistment in the Navy in World War II. In the spring of 1946 or 1947 Marie and Earl came to her house in Sikeston, Missouri. The two of them told her that they had just been married in Arkansas. While she did not attend the ceremony, she did remember seeing the marriage certificate. Subsequently, Earl introduced Marie to other people as his wife.

Besides the aforementioned testimony, the following exhibits were introduced. Group exhibit 10 was a group of letters addressed to "Mr. and Mrs. Earl J. Bailey" from decedent's mother, Ida Venie Bailey. Exhibit 11 was a letter from Velma Bailey, respondent in the instant action, addressed to "Mr. and Mrs. Earl Bailey." Exhibit 12 was a bank statement showing a joint account in the names of Earl J. Bailey or Marie Bailey. Exhibit 13 is Marie Bailey's 1950 driver's license. Exhibit 14 is a group of life insurance and disability insurance policies issued to Earl and Marie Bailey. On the policies issued to Earl Bailey, Marie is listed as the beneficiary and the relationship to the insured is listed as "wife." The policies insuring Marie list Earl Bailey as the beneficiary and his relationship to the insured is described as "husband."

Exhibit number 15 is a joint account of Earl and Marie Bailey at the

Wagner Casting Credit Union. Exhibit number 16 is an insurance policy issued by Wagner Casting to Earl Bailey. The beneficiary is listed as "Mandy Marie Bailey—Wife." Exhibit number 17 is a warranty deed for property in Dalton City issued to Earl J. Bailey and Marie M. Bailey, husband and wife." Exhibit number 18 is a 1977 Federal income tax return filed jointly by Earl and Marie Bailey with Marie Bailey listed as Earl Bailey's spouse. Exhibit number 19 is a statement showing a joint account by Earl and Marie Bailey at a local savings and loan. Exhibit number 20 is Mandy M. Bailey's 1962 drivers license change of address form and Highway Safety Citation.

Petitioner claims that the preceding proof demonstrates that Earl and Marie Bailey were married. The rule is that "* * * in all civil actions other than bigamy, adultery or criminal conversations, 'reputation,' cohabitation, the acknowledgement of the parties, etc., are sufficient evidence of marriage." (*Patek v. Peick* (1979), 74 Ill. App. 3d 714, 718-19, 393 N.E.2d 569, 573.) Respondent urges us not to follow *Patek* because of its misplaced reliance on section 409 of the Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1979, ch. 40, par. 409.) Section 409 provides that, "A marriage which may have been celebrated or had in any foreign state or country, may be proved by the acknowledgement of the parties, their cohabitation, and other circumstantial testimony."

While it is true that courts have been reluctant to apply provisions of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*) beyond the scope of proceedings specifically provided for in the Act (*In re Adoption of Scheidt* (1980), 89 Ill. App. 3d 92, 411 N.E.2d 554), we are not persuaded by respondent's position. The standard codified in section 409 is the common law standard for proof of marriage in all civil actions except bigamy and a few other cases. *Spencer v. Burns* (1952), 413 Ill. 240, 108 N.E.2d 413.

Applying the standard enunciated in *Patek*, we believe that the trial court erred in finding that petitioner had not proven a ceremonial marriage. There was, of course, the testimony of petitioner, which was improperly excluded. Petitioner's testimony established a valid reason why she could not produce a marriage license, a description of where they got married, and the circumstances surrounding the marriage. Petitioner's testimony was strongly corroborated by the testimony of several disinterested witnesses. Documentary evidence demonstrated that decedent had held himself out to be petitioner's husband and engaged in a course of conduct for over 30 years that pointed to only one conclusion. Marie and Earl Bailey were legally married, husband and wife.

Respondent's only evidence indicated that a record of the marriage certificate could not be found. That is not persuasive because, as other

courts have recognized, such records are lost, destroyed and misrecorded. *Murrelle v. Industrial Com.* (1943), 382 Ill. 128, 46 N.E.2d 1007.

We therefore find that the decision of the trial court was against the manifest weight of the evidence. The trial court's order denying petitioner's request to vacate the letters of administration issued to respondent is reversed.

Reversed.

KASSERMAN, P. J., and WELCH, J., concur.