*In re* ESTATE OF ANDREA MARIE HALL, Deceased (Regina Pavone, Petitioner-Appellant, v. William G. Hall, Adm'r, Respondent-Appellee).

First District (2nd Division)   No. 1—97—4654

Opinion filed December 31, 1998.

830

Daar, Fisher, Kanaris & Vanek, P.C., of Chicago (Steven Fisher and Thomas A. Vickers, of counsel), for appellant.

Anthony G. Barone & Associates, of Naperville (Anthony G. Barone, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:
Andrea Hall died intestate on November 16, 1996. Petitioner, Re-

gina Pavone, Hall's life partner, filed a petition in the probate court seeking a surviving spouse's share of Hall's estate pursuant to section 2—1 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/2—1 (West 1996)). Respondent, William Hall, is the administrator of Hall's estate. Respondent filed a motion to dismiss petitioner's claim pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)), contending that petitioner cannot be a surviving spouse because Illinois does not recognize same-sex marriages. The trial court granted respondent's motion to dismiss, and petitioner appeals. We have jurisdiction pursuant to Supreme Court Rule 304(b)(1). 155 Ill. 2d R. 304(b)(1) (allowing appeals from judgments entered in the administration of an estate that determine a right or status of a party).

On appeal, as in the trial court, petitioner challenges the constitutionality of Illinois' prohibition of same-sex marriages. Specifically, petitioner argues that the prohibition violates the equal protection provisions of the United States and Illinois Constitutions. Nevertheless, finding that this issue is not justiciable within the context of this case, we do not reach the merits of petitioner's contentions. For the reasons that follow, we affirm.

## I. BACKGROUND

Petitioner made the following allegations in her third amended verified complaint. Hall and petitioner met each other in February 1988. Shortly after that, they began dating exclusively and ultimately moved in together. On October 17, 1991, their relationship was solidified when Hall quitclaimed to petitioner one-half interest in the property at 321 Cherry Court in Glenview, Illinois.

In September 1993, Hall and petitioner sold the 321 Cherry Court property and used the proceeds to purchase a home located at 1107 West Pratt in Chicago. The financing for this property was secured by both Hall and petitioner.

On December 23, 1995, Hall and petitioner were "married" in a private ceremony. At that ceremony, they exchanged vows and wedding bands. Although Hall and petitioner wished to formalize their union by obtaining a marriage license, they did not apply for one, reasoning that any attempt would be futile in light of Illinois' prohibition on same-sex marriages.

Nevertheless, from December 23, 1995, onward, Hall and petitioner considered themselves married. They shared the above-mentioned home at 1107 West Pratt as well as a "special community of thoughts and deep emotional attachment." They also held themselves out to the world as being "married," including, but not limited to, friends and

immediate family members. Moreover, they were dependent on each other for the maintenance and upkeep of their home as well as daily living expenses and necessities of life. They commingled their funds through joint bank accounts, joint lines of credit, and purchases such as boats and cars. Hall and petitioner's obligations also included the financial support of Hall's sister and Hall's minor son. In sum, petitioner contends that her relationship with Hall mirrored that of a heterosexual couple legally joined through marriage; it "exhibited all of the pertinent attributes associated with matrimony and a long term, enduring commitment between two consenting adults."

## II. JUSTICIABILITY OF PETITIONER'S CONSTITUTIONAL CHALLENGE

Petitioner's third amended complaint sought a surviving spouse share of Hall's estate pursuant to section 2—1 of the Probate Act. Section 2—1 provides in pertinent part:

> "The intestate real and personal estate of a resident decedent *** descends and shall be distributed as follows:
> (a) If there is a surviving spouse and also a descendant of the decedent: 1/2 of the entire estate to the *surviving spouse* and 1/2 to the decedent's descendants per stirpes." (Emphasis added.) 755 ILCS 5/2—1(a) (West 1996).

Respondent, however, contended that petitioner cannot obtain surviving spouse status since Illinois law prohibits same-sex marriages. See 750 ILCS 5/212(a)(5) (West 1996) (prohibiting marriages between two individuals of the same sex); 750 ILCS 5/213.1 (West 1996) (declaring that "marriage between 2 individuals of the same sex is contrary to the public policy of [Illinois]"); 750 ILCS 5/201 (West 1996) (stating the formalities of a valid marriage as one that is between a man and a woman licensed, solemnized and registered). In turn, petitioner argued that the prohibition against same-sex marriages is unconstitutional. Thus, the parties redefined the issue from whether petitioner was entitled to a surviving spouse share of Hall's estate to whether Illinois' proscription on same-sex marriages is unconstitutional.

Unlike the former issue, we believe the latter issue is not justiciable in this case. Specifically, assuming we declare the proscription on same-sex marriages unconstitutional and void *ab initio*, the fact remains that petitioner and Hall were never legally married. Although the same-sex marriage prohibition explains why petitioner and Hall did not legally marry, a declaration that the same-sex marriage prohibition is unconstitutional and void *ab initio* will not change petitioner's marital status. Because Illinois law and public policy preclude us from conferring "spouse status" upon petitioner, a necessary requisite for obtaining a surviving spouse's share under the Probate Act, we find

that the issue is moot because it does not affect the actual controversy between the parties. We also find that petitioner lacks standing to raise the issue in this case. Thus, because an adjudication of petitioner's constitutional challenge brings her no closer to obtaining surviving spouse status, we must exercise judicial restraint and decline to address her challenge.

### A. Mootness of Petitioner's Constitutional Challenge

■ A matter is moot where it " 'presents or involves no actual controversy, interests or rights of the parties, or where the issues have ceased to exist.' " *First National Bank v. Kusper*, 98 Ill. 2d 226, 233 (1983), quoting *People v. Redlich*, 402 Ill. 270, 278-79 (1949). Commentary on Illinois law defines a moot case as:

"[O]ne which seeks to determine an abstract question, which does not rest on existing facts or rights, or which seeks a judgment of a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment on some matter which, when rendered for any cause, cannot have any particular legal effect on the then existing controversy." 5A C. Nichols, Illinois Civil Practice § 109.12, at 79 (rev. ed. 1998).

" 'Courts of review ordinarily will not consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided.' " *People ex rel. Sklodowski v. Illinois*, 162 Ill. 2d 117, 130 (1994), quoting *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990); see 5A C. Nichols, Illinois Civil Practice § 109.11, at 73 (rev. ed. 1998) ("It is the duty of the reviewing court to decide actual controversies which can be carried into effect, and not to give opinions on moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it"). In *People ex rel. Black v. Dukes*, 96 Ill. 2d 273 (1983), our supreme court stated:

"A principal reason for this well-established rule of justiciability is the fear that the parties to a dispute which for practical purposes has ceased to exist will lack the 'personal stake in the outcome of the controversy [which serves] to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult *** questions' [citations] and the desire to avoid binding later courts which may be better informed on the legal issue to a precedent announced by an earlier court with less reliable information. [Citation.]" *Dukes*, 96 Ill. 2d at 276-77.

Petitioner in this case attempts a challenge of Illinois' proscription on same-sex marriages. To save petitioner's challenge from mootness,

a declaration that the proscription is unconstitutional must have some bearing on the actual controversy of whether she is entitled to a spousal share of Hall's estate. It is axiomatic that for one to be entitled to a surviving spouse's share under the Probate Act that individual must be considered a spouse of the decedent. Thus, to determine whether petitioner's constitutional challenge is a moot point, we must decide whether, assuming the prohibition on same-sex marriages is declared unconstitutional and void *ab initio*, the relationship between Hall and petitioner can be construed to be either a valid marriage or be of such nature that we can confer the rights of a "spouse" upon petitioner. See *In re Mac Harg*, 120 Ill. App. 3d 753, 755 (1983) (" 'spouse' refers to a legal wife or husband").

■ It is clear from the alleged facts that the relationship did not meet the statutory requirements for a valid marriage. Under the Illinois Marriage and Dissolution of Marriage Act (Marriage Act), the formalities for a lawful marriage require "[a] marriage between a man and a woman licensed, solemnized and registered as provided in [the] Act." 750 ILCS 5/201 (West 1996). Notwithstanding the alleged unconstitutional requirement that the couple be a man and a woman, petitioner has failed to allege sufficient facts to establish a valid marriage. Petitioner and Hall did not obtain a license nor did they register their marriage. Petitioner's pleadings also lack any allegation that the alleged solemnization was performed by someone authorized under the law. See 750 ILCS 5/209 (West 1996). Consequently, petitioner has failed to allege facts establishing a marriage that meets the requirements of the Marriage Act.

Although Illinois courts have conferred "spouse" status upon individuals where their marriages lacked compliance with one of the directory requirements of the Marriage Act, we find these cases inapplicable to the instant case. See, *e.g., In re Driskell*, 197 Ill. App. 3d 836, 842 (1990) (failure to follow the one-day waiting period after obtaining the license (see 750 ILCS 5/207 (West 1996)) did not void the marriage, although marriage was rendered invalid on basis of incapacity of purported husband); *In re Estate of Bailey*, 97 Ill. App. 3d 781, 786 (1981) (except for the lack of a marriage license, all the evidence presented showed that the couple was legally married); *Haderaski v. Haderaski*, 415 Ill. 118, 119-22 (1953) (lack of license in otherwise lawful marriage did not invalidate marriage, as the statute requiring a license was directory and not mandatory). All of these cases involved situations where the party seeking enforcement of the marriage believed in good faith that he or she was lawfully married and, but for the failure to comply with a directory requirement, was otherwise lawfully married. However, in the instant case, although

petitioner and Hall may have subjectively believed that the ceremony and exchange of vows and rings constituted a marriage between themselves, they nonetheless knew that the marriage was not legally recognized. This is evidenced by their failure to seek a marriage license because of their belief that any effort would have been futile under Illinois law.

■ The fact that petitioner knew that she was not lawfully married also precludes her from obtaining spouse status through the putative spouse provision of the Marriage Act. Section 305 of the Marriage Act provides:

"Any person, having gone through a marriage ceremony, who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse until knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights." 750 ILCS 5/305 (West 1996).

In this case, petitioner admits that she knew that she was not legally married to Hall. Consequently, the putative spouse provision fails to confer spouse status upon petitioner.

■ Because case law and the putative spouse provision fail to provide petitioner with spouse status, the only remaining option is to consider whether the relationship between petitioner and Hall is a legal equivalent to marriage. This proposition, however, must fail because treatment of their relationship as a legal equivalent to marriage would be tantamount to recognizing common law marriage, which Illinois outlawed in 1905. See 750 ILCS 5/214 (West 1996) ("Common law marriages contracted in this State after June 30, 1905 are invalid"). Our supreme court, in *Hewitt v. Hewitt*, 77 Ill. 2d 49 (1979), rejected the contention that a relationship similar to the one in the instant case, albeit between heterosexuals, could yield marital rights upon the knowingly unmarried cohabitants.

In *Hewitt*, the plaintiff filed a complaint for divorce but, soon after, admitted that she and defendant were not married, that they never had a marriage ceremony, and that they never obtained a marriage certificate. However, the couple did forge a relationship not unlike the one in the instant case. There, after plaintiff became pregnant, defendant told her that they were husband and wife and that they would live as such. He told her that no formal ceremony was necessary and that he would share his life, future earnings, and property with her. Immediately, they announced to their respective parents that they were married. From then on, they held themselves out as husband and wife. Plaintiff devoted her time and effort in supporting defendant's professional education and the establishment of his dental

practice. She obtained financial support from her parents for this cause, and she assisted defendant with her own special skills. She also helped further his career and social reputation by attending social activities with him. This unmarried, family-like relationship ran from 1960 until 1975 and yielded three children. Plaintiff alleged that, in light of this relationship, she was entitled to an equitable one-half share of the property they accumulated together.

The court stated that, realistically, the issue before it was "whether it is appropriate for [the] court to grant a legal status to a private arrangement substituting for the institution of marriage sanctioned by the State." *Hewitt*, 77 Ill. 2d at 61. In answering this question in the negative, the court found that recognition of mutual property rights stemming from the above relationship would clearly violate the policy of the Marriage Act. The court stressed that the legislature's rejection of the "no-fault" concept of divorce, which had been widely accepted in other jurisdictions, manifested a higher regard for the marital relationship, reaffirming "the traditional doctrine that marriage is a civil contract between three parties—the husband, the wife and the State." *Hewitt*, 77 Ill. 2d at 63. The court also stated that "[t]he policy of the Act gives the State a strong continuing interest in the institution of marriage and prevents the marriage relation from becoming in effect a private contract terminable at will." *Hewitt*, 77 Ill. 2d at 64.

Similar to *Hewitt*, in this case the relationship between petitioner and Hall was, at all times, nothing more than a private contract terminable at will. Assuming *arguendo* that we were to address petitioner's issue and declare Illinois' proscription on same-sex marriages unconstitutional and void *ab initio*, the fact that petitioner and Hall never entered into a legally binding marriage would nevertheless remain. Thus, petitioner still would not be entitled to a surviving spouse's share of Hall's estate. This point becomes manifest when one considers the issue at hand in a different context.

Assuming the same relationship between petitioner and Hall, assume further that this cause came before the court on petitioner's prayer for divorce and that she argued that they should be considered married since the prohibition of same-sex marriages is unconstitutional. Not only does this substantially mirror the circumstances in *Hewitt*, but it also tests the bases and parameters of the private contract between Hall and petitioner. Assuming we found the prohibition of same-sex marriages invalid, *Hewitt* would preclude us from imposing different terms to their "private contract." We could not interchange the parties' terminable-at-will relationship for one that requires a showing of fault to terminate and, most importantly, the

state's involvement. Moreover, such interchange would impose consequences never imagined by the parties when they formed their private contract, including entitlement to an equitable division of property and maintenance upon termination of their relationship. Under these circumstances, it is clear that we cannot retroactively redefine petitioner and Hall's relationship as a lawful marriage or even confer the benefits of a legal marriage upon their relationship. If we did, we essentially would be resurrecting common law marriage contrary to the law established in *Hewitt*.

Thus, we do not believe we have the authority to consider a relationship that, at the time of its inception, did not carry with it the consequences of a legal marriage; as a result, petitioner cannot be elevated to a "spouse" status and therefore be entitled to a spousal share of Hall's estate under the Probate Act. Consequently, we conclude that petitioner's constitutional challenge of the proscription of same-sex marriages is a moot issue in this case.

■ Nonetheless, in some circumstances the court may elect to address moot issues under the public interest exception to the mootness doctrine. *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997). This exception, however, "is applied very narrowly and must be very clear to prevent dismissal of an appeal." *Harry W. Kuhn, Inc. v. County of Du Page*, 203 Ill. App. 3d 677, 685 (1990). "In order to review a case under the public-interest exception, a court must consider the public nature of the question, the need for an authoritative determination for future guidance of public officers, and the likelihood of future recurrence of the question." *Harry W. Kuhn, Inc.*, 203 Ill. App. 3d at 685; see *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622-23 (1952); *Maybell v. Illinois Liquor Control Comm'n*, 246 Ill. App. 3d 14, 20-21 (1993). Each criterion must be clearly shown to bring the case within the exception. *Harry W. Kuhn, Inc.*, 203 Ill. App. 3d at 685; *City of Chicago v. Leviton*, 137 Ill. App. 3d 126, 129 (1985).

■ In this case, although the issue raised by petitioner is clearly one of public interest, we do not believe the other requirements for the public-interest exception have been met. First, it is not clear whether Illinois needs an authoritative determination for future guidance. The moot issue in this case is not the kind involving diverging interpretations of a statutory provision or other law but, rather, it involves the application of the very old requirement that a marriage be between a "man and a woman." See 750 ILCS 5/201 (West 1996) (defining marriage recognized by Illinois as one "between a man and a woman"); Black's Law Dictionary 972 (6th ed. 1990) (defining marriage as a "[l]egal union of one man and one woman as husband and

wife"). That this requirement might be unconstitutional does not, in itself, require authoritative determination for future guidance. Second, this case does not involve an event of short duration, which is capable of repetition, causing this issue to evade review. At any time, a same-sex couple can apply for a marriage license and be rejected pursuant to the prohibition. That couple can then challenge the rejection through a declaratory action. There, the issue would be raised in the proper context and would not evade review. More importantly, a declaratory action will require the state to defend its law, an important dynamic not present in this case, and it is within this context that the issue would bear directly on the actual controversy of the action. Thus, we find that the necessary facts for invoking the public interest exception to the mootness doctrine are not present in this case.

### B. Standing

■ "[T]he standing doctrine is one of the devices by which courts attempt to cull their dockets so as to preserve for consideration only those disputes which are truly adversarial and capable of resolution by judicial decision." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 488 (1988). To establish standing, "[t]he claimed injury, whether actual or threatened, must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the grant of relief requested." *Messenger v. Edgar*, 157 Ill. 2d 162, 170 (1993), citing *Greer*, 122 Ill. 2d at 492-93.

■ In this case, petitioner's claimed injury is the denial of a surviving spouse's share of Hall's estate. Nevertheless, for relief, she asks the court to declare the ban on same-sex marriages unconstitutional. Considering the above criteria, we believe that petitioner does not have standing in this case to maintain her constitutional attack on the proscription of same-sex marriages. First, the denial of a spousal share cannot be said to be traceable to respondent's actions. The cause of the denial of a surviving spouse's share of Hall's estate is traceable to her status, not respondent's conduct. Second, as seen above, a declaration of the prohibition on same-sex marriages will not redress her injury. Even assuming that the prohibition is struck down, she still cannot be deemed a spouse as explained previously, and, thus, she cannot recover a spousal share under the Probate Act. Therefore, we likewise find that petitioner lacks standing to maintain this constitutional challenge of Illinois' prohibition of same-sex marriages in this case.

### III. CONCLUSION

For the reasons discussed above, we affirm the circuit court of

Cook County and remand this cause back for resolution of petitioner's remaining counts.

Affirmed and remanded.

GORDON, P.J., and McNULTY, J., concur.